**CRAFTINT MFG. CO. v. BAKER et al.**

**No. 8371.**

Circuit Court of Appeals, Ninth Circuit.

Jan. 10, 1938.

Charles M. Fryer, of San Francisco, Cal., and Fay, Overlin & Fay, of Cleveland, Ohio, for appellant.

Arlington C. White, of San Francisco, Cal., for appellee.

Before WILBUR, STEPHENS, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an interlocutory decree of the District Court of April 24, 1936, holding claims 1, 2, 3, 4, 5, 6, 7, and 8 of letters patent No. 1,709,600, issued April 16, 1929, to appellee Baker, valid and infringed by the appellant.

The invention disclosed by the Baker patent relates to a process for preparing so-called "camera copy" to be used for lithography, photoengraving, rotogravure offset press, and like work. The process involves, first, photographing lines, screen, stippling, dots or the like, referred to in the briefs as "Ben Day" effects, and making a positive print from the negative on "silver print paper" which is fixed in a bath of hyposulphate of soda. The print is then "blanched" out, that is, made invisible to the eye or to the camera, by the application of a saturated solution of bichloride of mercury. The paper thus prepared is'to be used for a drawing by an artist. After the drawing is made such portion or portions of the blanched print of Ben Day effects as are desired to be shown in the finished drawing are redeveloped by the application of a pure caustic solution. The drawing with the Ben Day effects thus added is then complete and ready for photographic reproduction.

Claims 1, 2, 6, and 8 of the patent in suit cover methods or processes of making the

"camera copy" described above. Claims 3 and 4 cover the product "camera copy." Claim 5 covers the product called a "medium," which is the photographic print of the Ben Day effects after the print has been blanched and made invisible but before the artist's drawing has been made thereon. Claim 7 covers the method of making the "medium" described in claim 5.

Appellant contends that the District Court erred in finding that the patent was valid. It is contended that appellee Baker was not the original inventor of the process, or product, claimed in his patent; that the process was previously known and used by others in this country and was in public use and on sale for more than two years prior to the date of application for the Baker patent in suit. Rev.Stat. § 4886, as amended by Act March 3, 1897, § 1, 35 U. S.C.A. § 31. The prior discovery relied upon by appellant was that by Olin M. Root and Roland J. Scott who used a method as early as 1924 for producing photographic copy similar to appellant's. Application for the Baker patent was filed August 25, 1927. It also appears that there was a sale of paper or "medium" embodying the Root and Scott process before the filing of such application. It is claimed by appellees that there must be a public use or knowledge of the invention before there can be anticipation, and that there was not sufficient evidence of such a use or knowledge in regard to the Scott-Root application. In view of the use of the Scott-Root process by the inventors thereof, and in view of the evidence of sales of their product, the Scott-Root process would anticipate the Baker invention if it involved identical or equivalent steps. Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L. Ed. 651; see Walker on Patents, 6th Ed., pp. 122, 123, §§ 97, 98, p. 137, § 110; Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L. Ed. 1049.

Did the Scott-Root invention[1] involve the same process as is set out in the Baker patent? In the Scott-Root process a print was made of Ben Day effects by first photographing such effects and printing the same on "developing-out" paper by the usual photographic process. The image developed on the print was then "practically bleached out" as follows: The print was dipped in a solution of three parts of potassium iodide to one part of resublimated iodine until the paper assumed a dark brown color. It was then immersed in a bath containing sodium bisulphite until the brown "stain" left the paper. After washing and drying it was ready as a "medium" for the artist's drawing. After the drawing was made the Ben Day effects were redeveloped in areas where wanted by a developing solution such as sodium sulphide or barium sulphide. After this, it was necessary to treat the print to a bath composed of sodium hyposulphite, acidulated with acetic acid, known as the acid hypo bath, and to rinse and to dry it, because the bleaching agents used in the process did not render the undeveloped Ben Day effects invisible to a wet plate which is used by almost all photo engravers to photograph the prints for commercial use. By the use of the acid hypo bath the undeveloped portion of the Ben Day pattern was dissolved out of the paper.

In the Baker patented process by using a solution of bichloride of mercury as a bleaching agent on "silver print paper" the photographic pattern of Ben Day effects is rendered invisible not only to the eye, but to a wet plate. Thus the last step in the Scott-Root process, that is, the fixing by means of an acid hypo bath, is unnecessary and is omitted in the Baker process.

There is evidence to the effect that the necessity of fixing the print in the acid hypo bath after the artist's drawing had been made thereon rendered the Scott-Root process commercially impractical. The evidence indicates that the elimination of this step by the Baker process made it a commercial success. Arnold Seymour, artist, employed by the Emporium in San Francisco, who in his work had occasion to use both appellees' and appellant's medium or products, testified as to the practicableness of a medium paper containing a blanched out pattern which, after the artist's drawing had been made thereon and after the developing out of the pattern, would have to be dipped in an acid hypo bath, as follows: "I cannot imagine of what value a drawing medium of the character as exemplified by plaintiffs' Exhibit No. 29 [camera copy made from Scott-Root paper] * * * could be to the artist in making copy for reproduction. Your drawing would be lost in the background. I would absolutely not be interest-

---

[1] Scott and Root applied for a patent for their invention June 13, 1924. This application was forfeited and abandoned.

ed in using that type of drawing medium at all."

Upon being asked whether or not the invention would be practical if he were told that by immersing the sheet in an acid hypo bath and then rinsing it in water and drying it the reproduction of the whole pattern would be prevented, he answered:

"There are several reasons why it would not be practical. In the first place, the modern commercial artist who is working under high pressure 90 per cent of the time, the time element would be very badly against him in a case like that. Another thing is this: If I put in a lot of work on a drawing, using India inks and possibly some whites, which we nearly all have to use in a drawing, I would hate to have to dip it in emulsion of any sort and take a chance on the drawing being ruined, to develop a little background. * * *

"There is no artist who is absolutely perfect in his work; India ink is indelible; the only way you have for correcting mistakes in drawing is to use white to cover them up. The white is a water color which is soluble in any liquid that I know of, and it would run all over your drawing upon dipping it in a hypo bath. In spots where your ink was heavy probably part of the ink would run off too. I would hate to think of what the production of a copy would look like after it had been passed through an acid hypo bath; I have never seen one."

Scott also testified as follows: "It is true that probably the major feature in the success of those drawing mediums [Craftint and Mistograph, appellant's and appellees' products] is the absence of having to use the acid hypo fixing bath and the rinsing in water."

We think it clear that the appellees' invention was not anticipated by the Scott-Root process.

It is contended by appellant that the evidence showed that the use of a mercuric chloride as a bleaching agent was old in the art and the substitution of it in the place of the iodine solution and the sodium bisulphite solution used in the Scott-Root process did not constitute invention. There is no merit in this contention. The use of bichloride of mercury is but one step in

the Baker patented process. The fact that steps in a process are old does not negative invention. See Vol. 1, Walker on Patents, 6th Ed., p. 96, § 75.

Appellant contends that two British provisional specifications filed by Wilhelm Grune in 1866 anticipate the Baker process. These specifications cannot be used to show anticipation. Until a foreign invention has been patented or described in a prior printed publication it cannot be used to negative novelty. Ireson v. Pierce, C.C., 39 F. 795; Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 23 L.Ed. 952; see Milburn Co. v. Davis-Bournonville Co., supra. Nor does the fact that these British specifications were cited as references in the prosecution of the Scott and Root application for a patent show that they were admissible as prior printed publications. The Examiner in that application cited them as British patents.

It should be here noted that appellant in its brief points out that the witness John J. Knobloch testified that he took Exhibit S, a piece of Scott-Root medium paper in which the photographic pattern had been redeveloped in part and which had not been fixed in an acid hypo bath, and made a photographic reproduction. He testified that such reproduction met the requirements of the photoengraving and photolithographing art. It appears, however, that this result was not accomplished by the use of a wet plate camera as used by Scott and Root with their invention, but with a camera adapted to be used with dry films, and that such a film was used for the experiment.[2] Such a demonstration using the Scott-Root paper in a manner not contemplated by the inventors does not anticipate the Baker invention which does away with the necessity of fixing in an acid hypo bath the drawing medium after parts of the pattern have been developed when using a wet plate camera.

We conclude that the Baker patent, No. 1,709,600, is not anticipated by the prior art cited, and is valid.

### Infringement.

It is conceded by appellant in its brief that its new Craftint drawing paper, Appellees' Exhibit 11, infringes the Baker patent in suit.

It is contended, however, that the so-called old Craftint paper, exemplified by

[2] There is testimony in the record to the effect that the film used by the witness Knobloch was not on the market until 3½ years before his testimony in 1935, and, consequently, after the Baker patent and the use of the Scott-Root process.

Appellees' Exhibit 10 and 21, is not an infringement of any of the claims of the patent in suit.

 In reply appellees contend in their brief that the question of infringement is not properly before this court. It is claimed that appellant virtually consented to a finding of infringement. It does appear that appellant did not press its defense of noninfringement before the trial court. It does not appear, however, that appellant waived its defense of noninfringement or conceded infringement. It was a necessary part of the appellees' case to show infringement, and a finding of infringement was made. This finding is assigned as error. In regard to appellees' contention that no evidence of noninfringement was presented, it may be stated that it appears from the record that the old Craftint paper was made according to the disclosure of appellant's patent No. 1,778,397, issued October 14, 1930. The question is presented, then, as to whether or not a product made according to this later patent infringes the appellees' earlier patent.

An examination of patent No. 1,778,397 discloses that in making the old Craftint paper the pattern of Ben Day effects is applied to the medium paper not by photographic means, but by a printing press. The pattern is printed on the paper with an ink compounded of glycerine and lead acetate thickened with lead carbonate. After the application of the ink the print is washed with a weak sulphuric acid solution which forms insoluble lead sulphate which is invisible. The paper containing the invisible print is then washed and dried and is ready for use by the artist or draftsman. After the drawing is made, to bring out the invisible pattern, a solution of soluble sulphide is applied, which will react with the lead sulphate to form black lead sulphide.

The fact that the claims of appellees' patent are broad enough to cover the appellant's process and medium paper does not establish infringement. To infringe there must be identity of process or combinations of materials used with those described in the patent, or their equivalents. Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 18 S.Ct. 707, 42 L.Ed. 1136; Elevator Supplies Co. v. Graham & Norton Co., 3 Cir., 44 F.2d 354, 356; Weil Pump Co. v. Chicago Pump Co., 7 Cir., 74 F.2d

13, 17; Shull Perforating Co., Inc. v. Cavins, 9 Cir., 94 F.2d 357, decided this date. Similarity of result is not sufficient to show infringement. Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 25 S.Ct. 697, 49 L.Ed. 1100; Stebler v. Porterville Ass'n, 9 Cir., 248 F. 927; Schull Perforating Co. v. Cavins, supra; Philadelphia Rubber Co. v. Portage Rubber Co., 6 Cir., 241 F. 108. It should be noted that in the Baker patent it is stated: "It is understood that if the surface shown in Fig. 2 [blanched surface containing invisible Ben Day effects] were printed with a chemical that can be given a photographic value by the application of any kind of developing agent, that my newly invented camera copy would be effectively produced whether the nonacting image was produced by a chemical applied by printing press or otherwise and whether the reproduction were made by pure water or a chemical solution." This is not a disclosure of a process, but a mere suggestion of a process not disclosed. See National Theatre Supply Co. v. Da-Lite Screen Co., 7 Cir., 86 F.2d 454; Seawall v. Jones, 91 U.S. 171, 185, 23 L.Ed. 275, 278. The process of applying invisible patterns by a printing press and then bringing portions of it to visibility by the use of sodium sulphide reacting with lead sulphate to form black lead sulphide is not the equivalent of the process disclosed by appellees' patent where the invisible pattern is applied by a photographic process and redeveloped by a caustic soda. Nor is appellant's product, old Craftint medium paper, the same combination or composition as appellees' product as disclosed in the Baker patent. We conclude that appellant's old Craftint medium does not infringe appellees' patent.

### Laches.

 Appellant contends that the lower court erred in finding that the suit was not barred by laches. It appears that on June 18, 1929, appellee H. M. Baker served notice of infringement on William Swaysland.[3] Also, in a letter dated December 30, 1929, appellees served notice of infringement on W. W. Harry whom appellee Baker testified he understood "was a salesman for Craftint, or a representative at any rate." In a letter dated December 30, 1929, appellant notified appellees that they had received a copy of the letter written to Harry. In this letter appellant stated that the Scott-Root process

---

[3] Louis S. Sanders, president of appellant, testified that Swaysland was presi-dent of the Craftint Manufacturing Company prior to March, 1935.

was a complete anticipation of the appellees' patent. It requested appellees to proceed with a suit or cease threats of prosecution. The bill of complaint was filed March 20, 1935. There was thus a period of over five years before suit was brought during which appellees knew that the appellant was infringing their patent. But in deciding whether or not a plaintiff is barred by laches from prosecuting his suit, courts of equity generally follow the analogous statute of limitations.[4] When suit is brought within that time the burden is on the defendant to show that extraordinary circumstances justify the application of the doctrine of laches. City of Roswell v. Mountain States Telephone & Tel. Co., 10 Cir., 78 F.2d 379, 385; see Gillons v. Shell Oil Co., 9 Cir., 86 F.2d 600. There must be reliance on the delay resulting in a change of position by the party asserting laches. The question of whether the doctrine of laches should be applied rests in the sound discretion of the trial court. Appellant, in its brief, points to no evidence in the record showing a change of position after notice of infringement by appellees that would justify this court in reversing the decree of the District Court and applying the doctrine of laches either as to the accounting or the injunctive relief.

That part of the decree of the District Court enjoining sales by appellant of "old Craftint medium" exemplified by Appellees' Exhibit 10 and ordering an accounting as to prior sales of this product, is reversed. That part of the decree enjoining appellant from sales of "new Craftint" medium, exemplified by Exhibit 11, and ordering an accounting as to prior sales of this product, is affirmed.

---

4 In 35 U.S.C.A. § 70, it is provided: "But in any suit or action brought for the infringement of any patent there shall be no recovery of profits or damages for any infringement committed more than six years before the filing of the bill of complaint or the issuing of the writ in such suit or action."