**WHEELING STAMPING CO. et al. v. STANDARD CAP & MOLDING CO.**

Civil Action No. 2198.

District Court, D. Maryland.

April 12, 1945.

Edward A. Smith, of Baltimore, Md., and Christy, Parmelee & Strickland, of Pittsburgh, Pa. (by William H. Parmelee, of Pittsburgh, Pa., E. B. Gale, of Boston, Mass., and J. Preston Swecker, of Washington, D. C.), for plaintiffs.

Harry N. Baetjer, of Baltimore, Md., and Pennie, Davis, Marvin & Edmonds, of New York City (by Dean S. Edmonds and Roger T. McLean, both of New York City), for defendant.

WILLIAM C. COLEMAN, District Judge.

This is a patent infringement suit. Three machine patents are involved, which may be collectively described as embracing means for removing plastic articles from molding machines after the molding operation is completed, especially threaded bottle caps and vials. The alleged invention in the patents resides in avoiding the necessity of removing the threaded mold with the molded object attached, from the molding machine, and thereafter, by a separate operation, unscrewing and releasing the molded object from the threaded mold.

The earliest of these three patents is that to Rahm, No. 1,944,571, issued January 23, 1934, on application filed July 30, 1932. Only two of the eight claims in this patent are in suit, namely, claims 1 and 2. In this patent the upper part of the mold is in two parts, (1) a threaded force pin and (2) a sleeve through which the pin is inserted, the sleeve being used to hold the molded product in position while the unscrewing operation of the force pin, which is rotated in a fixed plane, takes place. As the lower portion of the mold is lowered, the molded product is unscrewed from the pin and is ejected out of the mold, falling into a receptacle placed under the upper mold sections. Claim 1 thus describes the machine for performing this operation: "In combination with a molding machine of the class described adapted to form a threaded portion in the object to be molded, of a thread forming member mounted and adapted to be rotated in a fixed plane, and means mounted and incorporated in the molding machine for unscrewing the thread forming member from the molded object and ejecting the same from the mold." Claim 2 is the same as claim 1, except claim 2 relates to a plurality of simultaneous molding operations.

The second patent, that to Scott, No. 2,-226,326, was issued December 24, 1940, on application filed October 28, 1936. Of the nineteen claims in this patent, only four are in suit, namely, 8, 11, 13 and 17. The alleged novelty of this patent lies in the fact that it introduces into the molding machine a separate stripping element. That is to say, it provides for sliding under the molded products, while they are still fast to the molds to which they are attached by screw-headed connections, a separate unit for unscrewing each molded product by a multiplicity of rotary cylindrical heads made of rubber which fit over the molded products, unscrew them and then the molded products are knocked out of these cylindrical heads into another receptacle.

Suffice it to quote claim 8 of those in suit as typical of the machine through which the operation just described is effected: "In a molding machine of the character described, the combination of separable molds for molding products therebetween with screw threaded connections between said products and a mold, means for unscrewing the products from the molds, and means for moving the unscrewing means into the space between said molds after separation for engaging the products to remove the same."

The third patent is that to Webb, No. 2,225,672, issued December 24, 1940, on application filed August 8, 1936. Although bearing the same issue date as Scott, the Patent Office, recognizing the similarity between the two patents, had put them in interference, and as a result, Scott was found to be prior in time. Of the 14 claims of this patent, only one is in suit, namely, claim 14. In this patent the alleged novelty lies in a separate stripping or unscrewing element, but it is different from that of Scott in that it consists of a belt which, by friction against the caps, accomplishes the final stage of unscrewing them, after which they are dropped into a receptacle. Claim 14 reads as follows: "In a molding machine of the character described, the combination of a plurality of separable molds arranged in a plurality of parallel rows for molding a plurality of separate products therebetween with a screw threaded connection between each product and a mold, movable means constructed to engage a single row only of the products at a time normally positioned to one side of the separable molds and adapted to be progressively moved to successive rows of said products, and means for progressively moving said last-named means across the space between said molds after separation thereof for engaging successive rows of the products to remove the same."

One of the plaintiffs, the Wheeling Stamping Company, is the licensee, and the other plaintiff, the Burrason Corporation, is the owner of the Rahm patent. The other two patents are owned by the Wheeling Stamping Company.

The weight of the credible evidence requires the conclusion that infringement of none of these patents by the defendant has been proved. Therefore the question as to the validity of the patents need not be considered, except in so far as it may be appropriate to do so, in clarifying questions bearing upon the alleged infringement.

The three patents will now be taken up in their chronological order, and the reasons given for our conclusion as respects infringement.

First, as to the Rahm patent, the two claims in suit embrace two basic elements: (1) A thread-forming member rotated in a fixed plane; and (2) means for unscrewing this thread-forming member from the molded object and ejecting the latter from the mold. As to the first element, the thread-forming member rotated in a fixed plane, Rahm would not have been entitled to the patent merely on the use of this, because it appears that this mechanical device was old, and used in a number of operations, although it may be true that no prior art patent or prior use has been shown where such had been applied to molding objects such as those here involved. See patent to Gray, No. 590,145, issued September 14, 1897; to Martindell, No. 1,875,071 filed March 14, 1929, issued August 30, 1932; and French patent to Roussell, No. 523,976, published August 27, 1921. Therefore, if there is novelty in Rahm, it is to be found in the method which Rahm employed for completely unscrewing the molded object from the thread-forming member, that is for accomplishing the complete release and ejection of the molded object. This Rahm did through a two-piece upper mold, i.e. by operating the thread-forming member in a collar or sleeve, which serves as the element that holds the molded object so that its unscrewing and complete release from the thread-forming member can be accomplished.

Next, as to the Scott patent, the four claims in issue likewise embrace the same two basic elements as Rahm, but the thread-forming member in the upper part of the mold is a one-piece, instead of a two-piece type, as in Rahm, and does not rotate. In addition, Scott has a third, distinct element for ejecting the molded object from the thread-forming member. This consists of a stripping device, slid under the molded objects while they are still fast to the molds, which is in the form of a separate unit, for unscrewing each molded product, having a multiplicity of rotary, cylindrical rubber-lined heads, which fit over the molded products, and unscrew them, whereupon the molded products are knocked down through these cylindrical heads into another receptacle and conveyed away.

Lastly, the patent to Webb likewise has the two basic elements, as in the Scott patent, and also a third, but this, unlike Scott, consists of an endless belt which operates, with the molded objects between it, to unscrew them from the thread-forming member.

Plaintiffs claim that the defendant's device infringes all three of these patents by reason of the combination in which it employs the three elements, namely, first, the thread-forming member; second, means for unscrewing this member from the molded

object; and, third, means for ejecting the molded object from the mold. Yet, at the outset, it is obvious that neither Scott nor Webb can be used with Rahm, because Rahm accomplishes the complete operation, including final ejection of the molded object, without using any means to unscrew the thread-forming member from the molded object except a part of the mold mechanism itself, whereas Scott and Webb each introduce another and distinct element to accomplish the final stage of unscrewing and ejecting the molded object.

Turning to an analysis of the defendant's device, known as the Stokes machine, we find that, first, the thread-forming member is not operated in connection with a sleeve or collar, but that the lower mold cavity is used to hold the molded object while the unscrewing takes place, thus serving the same purpose as the sleeve or collar in the upper mold in the Rahm patent; and, second, that the unscrewing operation remains incomplete until perfected by the use of a separate element in the form of a so-called stripper, that is, an arm constructed on the lower mold plate which is drawn across one side of the molded object, thus frictionally unscrewing it and causing it to drop down upon a pan which is moved laterally by the lower mold plate to receive it as the lower mold plate is slid from its molding position, and is carried thereby out from the space between the two mold plates and discharged from the pan, whereupon the lower mold plate is returned and the operation repeated.

We find no similarity between the defendant's device and the Rahm patent such as we think can amount to infringement of the latter, first, because of the definite difference in the construction of, and the manner in which the thread-forming member is employed for unscrewing it from the molded object in the two cases; and, second, because in Rahm the entire unscrewing and complete release of the molded object is performed without the aid of any element distinct from the thread-forming member and the sleeve through which it operates, whereas in the defendant's device the ejection and complete release is accomplished by the use, frictionally, of a stripper, namely, through contact with the molded object by a rubber-faced arm that is drawn across one side of the molded object, causing it to be completely unscrewed and released, and to drop to the lower mold plate, which forms a carriage for this stripping device, and which operates back and forth from the space between, to the outside of, the mold plates.

Second, we can see no similarity such as amounts to infringement between defendant's device and the Scott patent, because although the molding elements are similar, and there is, also, as in Scott, a third element for unscrewing and releasing the molded object, that element is distinctly different in both construction and operating principle from the one in Scott. That is to say, Scott, as we have seen, employs a multiplicity of rotary cylindrical rubber-lined heads fitted over the molded products which are completely unscrewed by force applied to these heads; whereas, in the defendant's device, only the final stage of unscrewing remains and this is accomplished by relatively slight friction of a stripper arm against one side of the molded object.

Finally, what has been said as respects lack of basic similarity between Scott and defendant's device is to a large extent true as respects Webb and the defendant's device. However, the similarity here is closer as respects the ejection feature; but we can hardly say it is really close, because the use of an endless belt by Webb embodies certainly a substantial difference in mode of construction, as well as operation from the construction and operation of a stripper, particularly where, as in defendant's device, the stripper is employed merely to dislodge the molded object from its very loosely held position on the threads of the thread-forming member, whereas the belt in the Webb patent, just as the cylindrical heads in the Scott patent, is used to accomplish the entire unscrewing of the molded object from a tight position.

The following facts are also indicative that, in view of the lack of basic similarity between the combination and operation of the elements in defendant's device and those in any of the patented devices, we should not give to the patents that extreme breadth of interpretation for which plaintiffs contend: First, Rahm has never been commercially operated; second, no Scott machine was ever commercially successful; and, third, only one Webb machine is shown ever to have been in commercial use, and that one was restricted to the production of a particular type of plastic articles, namely, vials, not bottle caps. That machine never made products with inside threads, but only those with external

threads, which shrink and therefore become loosened from the thread-forming member, in the molding, whereas the internal threads, when they shrink, become tighter on the thread-forming member. It is further significant that the specifications of Webb say that this patent is particularly applicable to the removal of elongated articles such as vials or bottles.

▮ Broadly summarized, the history of the three patents indicates that, assuming they are operable, nevertheless, they are of extremely doubtful commercial utility. This fact alone may not be entirely conclusive against the plaintiffs, but, nevertheless, it is of great significance and weight, when added to the fact, as explained, that there is very definite dissimilarity between the mechanism and operation of defendant's device and the devices constructed in accordance with the claims and specifications of the patents. In other words, to summarize and conclude, this Court is being asked to give a very broad interpretation to all of these patents, on the ground that Rahm is the pioneer inventor, and that the two succeeding patents of Scott and Webb indicate broad, valid improvements thereon. But to do this would be tantamount to reading into these patents what is not there. It would be tantamount to allowing the plaintiffs to preempt the field in this particular art, and to do so through patents which not only are not broad enough to warrant giving them that status, but which, so far, have proved to be little more than paper patents; whereas, on the other hand, the defendant's device, while not patented, not only has features as respects both construction and operation that are distinctly different from any described in the claims or specifications of plaintiffs' patents, but is now in extensive commercial use.

▮▮ The rule which must apply here is firmly established in our patent law. It was stated thus by the Supreme Court nearly fifty years ago in Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, at pages 568, 569, 18 S.Ct. 707, at page 722, 42 L.Ed. 1136, and has been many times since repeated:

▮

"The patentee may bring the defendant within the letter of his claims, but if the latter has so far changed the principle of the device that the claims of the patent, literally construed, have ceased to represent his actual invention, he is as little subject to be adjudged an infringer as one who has violated the letter of a statute has to be convicted, when he has done nothing in conflict with its spirit and intent. 'An infringement,' says Mr. Justice Grier in Burr v. Duryee, 1 Wall. 531, 572, [17 L.Ed. 650], 'involves substantial identity, whether that identity be described by the terms, "same principle," same "modus operandi," or any other. * * * The argument used to show infringement assumes that every combination of devices in a machine which is used to produce the same effect, is necessarily an equivalent for any other combination used for the same purpose. This is a flagrant abuse of the term "equivalent." '

"We have no desire to qualify the repeated expressions of this court to the effect that, where the invention is functional, and the defendant's device differs from that of the patentee only in form, or in a rearrangement of the same elements of a combination, he would be adjudged an infringer, even if, in certain particulars, his device be an improvement upon that of the patentee. But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function. Mere variations of form may be disregarded, but the substance of the invention must be there."

Among many recent decisions to the same effect, see Craftint Mfg. Co. v. Baker, 9 Cir., 94 F.2d 369.

A decree will be signed, in accordance with this opinion dismissing the complaint.