**Albert Karl TAG, Appellant,**

v.

**William P. ROGERS, Attorney General, and Dallas S. Townsend, Assistant Attorney General, Appellees.**

**No. 14591.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 4, 1959.

Decided May 21, 1959.

Petition for Rehearing En Banc Denied June 12, 1959.

Mr. Charles Bragman, Washington, D. C., for appellant.

Miss Marbeth A. Miller, Atty., Dept. of Justice, with whom Messrs. George B. Searls and Irwin A. Seibel, Attys., Dept. of Justice, were on the brief, for appellees.

Before Mr. Justice BURTON, retired,[*] and WILBUR K. MILLER and FAHY, Circuit Judges.

Mr. Justice BURTON.

This case concerns the validity of certain vesting orders issued in 1943 and 1949 in accordance with the Trading with the Enemy Act.[1] Their validity is attacked principally on the ground that they were issued in alleged violation of the 1923 Treaty of Friendship, Commerce and Consular Rights between the United States and Germany.[2] For the reasons hereafter stated, we uphold the validity of the orders and the validity of those provisions of the Act, as amended, pursuant to which the orders were issued.

The facts are not in controversy. At all material times the appellant, Albert Tag, was a German national residing in Germany. In 1938 he became entitled to receive, for life, the income from a trust fund of $100,000 established in New York City under the will of Anna Tag, an American citizen, who had died in 1936. He also became entitled to receive certain funds deposited to his credit in a checking account in a New York bank.

In 1943 and 1949 his rights to these respective funds were vested in the Attorney General of the United States, as successor to the Alien Property Custodian, in the manner prescribed by the Trading with the Enemy Act.[3] On October 18, 1954, Tag filed in the Office of Alien Property notice of his claim to the property and interests so vested. In 1956 the Director of that office dismissed the claim on the ground that Tag, being an enemy within the meaning of § 2 of the Act,[4] was not entitled to the return of the vested property or interests under § 32 of the Act.[5] Moreover, the time within which to seek a review[6] of the Director's dismissal of Tag's claim had expired before Tag filed either a claim or a suit to recover the property. Finally, in 1958, Tag instituted a suit in the United States District Court for the District of Columbia against Attorney General Rogers and Assistant Attorney General Townsend, the appellees here.

---

[*] Sitting by designation pursuant to 28 U.S.C. § 294(a).

1. 40 Stat. 411, as amended, 50 U.S.C.App. § 1 et seq., 50 U.S.C.A.Appendix, § 1 et seq.

2. 44 Stat. 2132, as amended, 49 Stat. 3258.
See especially:
"Article IV. * * *
"Nationals of either High Contracting Party may have full power to dispose of their personal property of every kind within the territories of the other, by testament, donation, or otherwise, and their heirs, legatees and donees, of whatsoever nationality, whether resident or non-resident, shall succeed to such personal property, and may take possession thereof, either by themselves or by others acting for them, and retain or dis-

pose of the same at their pleasure subject to the payment of such duties or charges only as the nationals of the High Contracting Party within whose territories such property may be or belong shall be liable to pay in like cases." 44 Stat. 2135–2136.

3. Vesting Order No. 1870, dated July 21, 1943, 8 Fed.Reg. 10837, amended August 20, 1943, 8 Fed.Reg. 11975; and Vesting Order No. 13730, dated August 25, 1949, 14 Fed.Reg. 5499.

4. 40 Stat. 411, 50 U.S.C.App. § 2, 50 U.S. Appendix, § 2.

5. 50 U.S.C.App. § 32, 50 U.S.C.A.Appendix, § 32.

6. 50 U.S.C.App.(Supp. V), § 33, 50 U.S. C.A.Appendix, § 33.

In that proceeding Tag did not rely upon the Trading with the Enemy Act or upon any procedure prescribed in it. On the contrary, he attacked the validity of the provisions of the Act pursuant to which the seizures were made. He claimed that those provisions are null and void because they are in conflict with international law and the Treaty of 1923. He asked the court to enjoin Rogers and Townsend from denying his claims to the vested funds. He asked also for the return, with interest, of whatever monies had been vested. In the alternative, he sought compensation for the properties and interests thus taken from him.

The District Court, after hearing, denied Tag's motion for summary judgment and granted that of Rogers and Townsend for dismissal of the complaint. Tag's appeal is from those orders.

The Act as passed in 1917 authorized the President, in time of war, to seize and confiscate enemy property found within the territories of the United States.[7] It applied to property owned by nationals of an enemy nation as well as to property owned by an enemy nation itself. It was a war measure deriving its authority from the war powers of Congress and of the President. It did not provide for the reimbursement of enemy owners for their property when thus confiscated. It made no distinction between property acquired before or after the beginning of the war.

Appellant contends, however, that there is now a practice amounting to an authoritative declaration of international law forbidding the seizure or confiscation of the property of enemy nationals during time of war, at least in the case of property acquired by the enemy national before the war and in reliance upon international agreements between the nations concerned. Appellant further contends that any seizure or confiscation of the property of an enemy national made by the United States contrary to the above declaration of international law is as null and void as though it were made in violation of the Constitution of the United States.

■■ Whatever force appellant's argument might have in a situation where there is no applicable treaty, statute, or constitutional provision, it has long been settled in the United States that the federal courts are bound to recognize any one of these three sources of law as superior to canons of international law.[8] The latter is the situation here and the only arguable issue is whether the provisions enacted in the Treaty of 1923, or the provisions contained in the Trading with the Enemy Act, as subsequently amended, shall be recognized by the courts. There is no power in this Court to declare null and void a statute adopted by Congress or a declaration included in a treaty merely on the ground that such provision violates a principle of international law.

In 1923 a Treaty between the United States and Germany was entered into

7. Markham v. Cabell, 1945, 326 U.S. 404, 413 et seq., 66 S.Ct. 193, 90 L.Ed. 165.

8. " * * * Congress was untrammeled and free to authorize the seizure, use or appropriation of such properties without any compensation to the owners. There is no constitutional prohibition against confiscation of enemy properties. Brown v. United States, 8 Cranch 110, 122, 3 L.Ed. 504; Miller v. United States, 11 Wall. 268, 305 et seq., 20 L.Ed. 135; Kirk v. Lynd, 106 U.S. 315, 316, 1 S.Ct. 296, 27 L.Ed. 193; Stoehr v. Wallace, 255 U.S. 239, 245, 41 S.Ct. 293, 65 L.Ed. 604; White v. Mechanics Securities Corp., 269 U.S. 283, 300, 46 S.Ct. 116, 70 L.Ed. 275." United States v. Chemical Foundation, Inc., 1926, 272 U.S. 1, 11, 47 S.Ct. 1, 5, 71 L.Ed. 131.

Also in The Paquete Habana, 1900, 175 U.S. 677, 708, 20 S.Ct. 290, 44 L.Ed. 320, the Court found that peaceful fishing vessels were exempt from confiscation by reason of international law. It recognized, however, that Congress could authorize the seizure of such vessels. "This rule of international law is one which prize courts, administering the law of nations, are bound to take judicial notice of, and to give effect to, *in the absence of any treaty or other public act of their own government in relation to the matter.*" (Emphasis supplied.) See also id., 175 U.S. at pages 710–711, 20 S.Ct. at page 302.

which became effective in 1925. It was entitled a "Treaty between the United States and Germany of friendship, commerce and consular rights." 44 Stat. 2132. It recognized in Article IV,[9] in general terms, the right of nationals of the respective contracting parties freely to dispose of personal property within the territories of the other party. It provided that the heirs, legatees or donees, without regard to their nationality, were entitled to succeed to such property and to retain or dispose of it subject only to such duties as would be theirs were they nationals of the contracting party within whose territories such property might lie.

The Treaty did not state whether such freedom would be effective in time of war between the contracting parties. However, the Government in arguing this case has assumed that Article IV was applicable in time of war as well as in peace. We, accordingly, have made the same assumption. On that basis the freedom of German nationals to dispose of their properties in the United States, under the Treaty of 1923, is in conflict with the Trading with the Enemy Act. Amendments emphasize the Government's right of seizure and confiscation. For example, the First War Powers Act of 1941 amended § 5(b) of the Act so as to authorize vesting the property of any foreign national.[10] The War Claims Act of 1948 added § 39 to the Act prohibiting the return of vested property to certain classifications of German nationals.[11]

The issue is thus presented whether subsequent Acts of Congress shall be recognized in our federal courts rather than earlier conflicting provisions of a treaty. Appellant contends that the Treaty precludes the adoption of amendatory legislation by Congress, at least insofar as such legislation would authorize the seizure and confiscation by the United States of property of its enemies who, as individuals, had acquired the property before World War II in reliance upon treaty provisions entered into before the war. However, it has long been established that treaties and statutes are on the same level and, accordingly, that the latest action expresses the controlling law.

"It need hardly be said that a treaty cannot change the Constitution or be held valid if it be in violation of that instrument. This results from the nature and fundamental principles of our government. The effect of treaties and acts of Congress, when in conflict, is not settled by the Constitution. But the question is not involved in any doubt as to its proper solution. A treaty may supersede a prior act of Congress, and an act of Congress may supersede a prior treaty." The Cherokee Tobacco, 1870, 11 Wall. 616, 620–621, 20 L.Ed. 227.

"We are of opinion that, so far as the provisions in that act may be found to be in conflict with any treaty with a foreign nation, they must prevail in all the judicial courts of this country. We had supposed that the question here raised was set at rest in this court by the decision in the case of The Cherokee Tobacco, 11 Wall. 616, [20 L.Ed. 227]. * * *

\* \* \* \* \* \*

" * * * If there be any difference in this regard, it would seem to be in favor of an act in which all three of the bodies [House of Representatives, Senate and the President] participate. And such is, in fact, the case in a declaration of war, which must be made by Congress, and which, when made, usually suspends or destroys existing treaties between the nations thus at war.

"In short, we are of opinion that, so far as a treaty made by the Unit-

---

9. See note 2, supra.

10. 55 Stat. 839, 50 U.S.C.App. § 5(b), 50 U.S.C.A.Appendix, § 5(b).

11. 62 Stat. 1246, 50 U.S.C.App. § 39, 50 U.S.C.A.Appendix, § 39.

ed States with any foreign nation can become the subject of a judicial cognizance in the courts of this country, it is subject to such acts as Congress may pass for its enforcement, modification, or repeal." Head Money Cases, (Edye v. Robertson), 1884, 112 U.S. 580, 597, 599, 5 S.Ct. 247, 253, 28 L.Ed. 798.

See also The Chinese Exclusion Case (Chae Chan Ping v. U. S.), 1889, 130 U.S. 581, 599–600, 9 S.Ct. 623, 32 L.Ed. 1068.[12]

■ These statements point the way to the answer in the present case. Once a policy has been declared in a treaty or statute, it is the duty of the federal courts to accept as law the latest expression of policy made by the constitutionally authorized policy-making authority. If Congress adopts a policy that conflicts with the Constitution of the United States, Congress is then acting beyond its authority and the courts must declare the resulting statute to be null and void. When, however, a constitutional agency adopts a policy contrary to a trend in international law or to a treaty or prior statute, the courts must accept the latest act of that agency.

There is a further material consideration. The 1952 Bonn Convention, among other things, provided that the Federal Republic of Germany thereafter would raise no objections against measures taken or to be taken with regard to property "seized for the purpose of reparation or restitution, or as a result of the state of war * * *."[13] It provided also that German nationals thereafter would not assert claims of any description against the allies or their nationals arising out of actions taken or authorized by such allies because of the existence of a state of war in Europe. In fact, the Bonn Convention gave support to Allied High Commission Law No. 63.[14] That law provided that the right, title and interest of German nationals in German external assets were extinguished as of the time of their vesting. Germany further guaranteed in the Bonn Convention that it would compensate the former owners of property so seized.[15] The final action

12. "The validity of this act [the Chinese Exclusion Act of October 1, 1888, 25 Stat. 504], as already mentioned, is assailed, as being in effect an expulsion from the country of Chinese laborers in violation of existing treaties between the United States and the government of China, and of rights vested in them under the laws of Congress. The objection that the act is in conflict with the treaties was earnestly pressed in the court below, and the answer to it constitutes the principal part of its opinion. 36 Fed. Rep. 431. Here the objection made is, that the act of 1888 impairs a right vested under the treaty of 1880, as a law of the United States, and the statutes of 1882 and of 1884 passed in execution of it. It must be conceded that the act of 1888 is in contravention of express stipulations of the treaty of 1868 and of the supplemental treaty of 1880, but it is not on that account invalid or to be restricted in its enforcement. The treaties were of no greater legal obligation than the act of Congress. By the Constitution, laws made in pursuance thereof and treaties made under the authority of the United States are both declared to be the supreme law of the land, and no paramount authority is given to one over the other. A treaty, it is true, is in its nature a contract between nations and is often merely promissory in its character, requiring legislation to carry its stipulations into effect. Such legislation will be open to future repeal or amendment. If the treaty operates by its own force, and relates to a subject within the power of Congress, it can be deemed in that particular only the equivalent of a legislative act, to be repealed or modified at the pleasure of Congress. In either case the last expression of the sovereign will must control." 130 U.S. at pages 599–600, 9 S.Ct. at page 627.

13. Convention on the Settlement of Matters Arising out of the War and the Occupation (Bonn Convention), May 26, 1952 (as amended by Schedule IV to the Protocol on the Termination of the Occupation Regime in the Federal Republic of Germany, signed at Paris on 23 October 1954), 6 U.S.T. 5652, 5670, T.I. A.S. 3425.

14. Official Gazette of the Allied High Commission for Germany, No. 64, 5 September 1951, 1107–1110.

15. Chapter 6, Article 5, of the Bonn Convention.

in this field is found in the 1956 Treaty of Friendship, Commerce and Navigation between the United States and Germany.[16] This reaffirmed the provisions of the Bonn Convention and added to them further agreement of complete co-operation.

In the light of the foregoing, appellant can invoke neither international law nor the 1923 Treaty with Germany to support his claim and the judgment of the District Court is

Affirmed.

---

16.  7 U.S.T.1839, 1919, 1928, T.I.A.S. No. 3593.