Ugo MONACO and Montecatini Societa Generale Per l'Industria Mineraria E Chimica Anonima, Plaintiffs,

v.

Paul H. HOFFMAN, The Spun Lite Corporation, Waterbury Companies, Inc., and Hoffman Products, Inc., Defendants.

Civil Action No. 2026–58.

United States District Court District of Columbia.

Dec. 8, 1960.

Harry A. Toulmin, Jr., Dayton, Ohio, for plaintiffs.

E. Seward Stevens, Litchfield, Conn., and Robert I. Dennison, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

The question presented in this case is one of patent law, namely, whether in an interference proceeding, an applicant for a patent who made his invention in a foreign country, is entitled to prove and rely on a date of invention prior to the filing date of his first application.

This is an action under 35 U.S.C. § 146, to review a decision of the Board of Patent Interferences of the Patent Office, on the question of priority as to the right to a patent, for which both the individual plaintiff Ugo Monaco and the individual defendant Paul Hoffman had applied. The Board decided in favor of Hoffman, and the patent issued accordingly. Monaco claims that he is entitled to priority and that the patent should have been granted to him.

The invention involved in this case is a machine and a process for the manufacture of corrugated sheets of fiber

glass. On September 13, 1953, Monaco, who developed his invention in Italy, filed an application for a patent in the United States, No. 380,247. He had previously presented a similar application in Italy, No. 13,352, on September 16, 1952. Accordingly, under the International Convention relating to patents and the provisions of 35 U.S.C. § 119, he was deemed entitled by the Patent Office to the filing date of September 16, 1952. Hoffman made his invention in Miami, Florida, and filed an application, No. 321,667, in the United States Patent Office on November 20, 1952.

An interference was declared by the Patent Office and voluminous testimony was taken. The appropriate tribunal of the Patent Office found that Hoffman had conceived the invention and had reduced it to practice not later than July 21, 1952, and on this basis accorded that date to him as the date of his invention. It is not disputed that Hoffman is properly entitled to it. Monaco contended, on the other hand, that he had made his invention in Italy and had reduced it to practice in Milan by April 12, 1952 and that, therefore, he was the prior inventor. The Patent Office excluded this evidence on the ground that in an interference proceeding, an inventor who makes his invention in a foreign country may not carry the date of his invention back of his first filing date, in this case, September 16, 1952.

Monaco then brought this suit, contending that this ruling of the Patent Office was erroneous as a matter of law. He took lengthy depositions in Italy, in order to prove that he had conceived and reduced the invention to practice in Milan by April 12, 1952. While it was not formally conceded, nevertheless, it was not actually disputed that the evidence justified a finding of fact that Monaco established April 12, 1952 as the date of his invention, if as a matter of law he is permitted to claim a date earlier than his first filing date on the basis of his

activities in a foreign country. Thus, the only question to be decided is, as indicated at the opening of this opinion, whether in an interference proceeding an inventor who made his development in a foreign country may rely on a date of invention earlier than that of the filing of his first application for a patent.

■■ It seems appropriate to commence the discussion of this question by adverting to some of the basic principles and the fundamental philosophy of the patent law of the United States. The purpose of the patent law is to grant a monopoly for a specified period to a person who makes an original invention and who renders it available to the American people. The successful applicant must invariably be an original inventor, that is he must make the invention himself without copying or imitating the work of any one else. Moreover, he is charged with knowledge of the literature in his field, irrespective of whether he is actually familiar with it and, therefore, he may not be deemed to be an original inventor if the substance of his alleged invention has been previously shown or described in a patent or other printed publication.

■ In addition to being an original inventor, the successful applicant must also believe himself to be the first inventor, since if he knows that someone had previously made the same invention, he cannot truthfully swear that he is an original inventor. He need not, however, invariably be the first inventor. In fact there are circumstances under which a patent is awarded to a person who is not actually the first inventor. Such exceptions at times arise out of developments achieved by a prior worker in the field who made and used the invention privately and secretly, and then abandoned it.[1] In that event a subsequent worker who is ignorant of his predecessor's accomplishments, but who is an original inventor, may receive a patent. So, too, if a person applies for a patent and then abandons his application and fails to

1. Gayler v. Wilder, 10 How. 477, 495–498, 13 L.Ed. 504; Acme Flexible Clasp Co. v. Cary Mfg. Co., C.C., 96 F. 344, affirmed 2 Cir., 101 F. 269.

place his invention into public use, or otherwise make it available to others, a later original inventor who is not aware of his predecessor's activities is not barred by this circumstance from securing a patent.[2] Another example is that of a lost art. There are many arts that have been extinct and forgotten for ages. A person who rediscovers one of them would be entitled to a patent if the subject matter were otherwise patentable, in spite of the fact that obviously he would not be the first inventor. For instance, an interesting question might arise if an artist who paints and constructs stained glass windows were to rediscover and revive a blue or a rose-colored pigment, now unknown, but which was used in connection with the building of medieval Cathedrals. So, too, it has been continuously held that if an inventor makes his invention in a foreign country and it is neither patented nor described in a printed publication, this circumstance would not preclude a subsequent original inventor in this country from receiving a patent.[3]

In brief, the objective of the patent law is to reward an inventor who makes a contribution to the public weal. Such a contribution is not consummated solely by making the invention. The achievement must also be made available to the public. A person who keeps his talent under a bushel is not entitled to a patent. This general doctrine was discussed by Chief Justice Taney in Gayler v. Wilder, 10 How. 477, 495, 496, 13 L.Ed. 504, as follows:

"The act of 1836, ch. 357, § 6, authorizes a patent where the party has discovered or invented a new and useful improvement, 'not known or used by others before his discovery or invention'. And the 15th section provides that, if it appears on the trial of an action brought for the infringement of a patent that the patentee 'was not the original and first inventor or discoverer of the thing patented', the verdict shall be for the defendant.

\*   \*   \*   \*   \*   \*

"And in the 15th section, after making the provision above mentioned, there is a further provision, that, if it shall appear that the patentee at the time of his application for the patent believed himself to be the first inventor, the patent shall not be void on account of the invention or discovery having been known or used in any foreign country, it not appearing that it had been before patented or described in any printed publication.

"In the case thus provided for, the party who invents is not strictly speaking the first and original inventor. \*   \*   \* Yet his patent is valid if he discovered it by the efforts of his own genius, and believed himself to be the original inventor. The clause in question qualifies the words before used, and shows that by knowledge and use the legislature meant knowledge and use existing in a manner accessible to the public. If the foreign invention had been printed or patented, it was already given to the world and open to the people of this country, as well as of others, upon reasonable inquiry.

"But if the foreign discovery is not patented, nor described in any printed publication, it might be known and used in remote places for ages, and the people of this country be unable to profit by it. \*   \*   \*

**2.** The Corn Planter Patent, 23 Wall. 181, 210, 23 L.Ed. 161; Application of Schlitter, 234 F.2d 882, 885, 43 CCPA 986; Monarch Marking System Co. v. Dennison Mfg. Co., 6 Cir., 92 F.2d 90, 92–93; Interurban Ry. & Terminal Co. v. Westinghouse Electric & Mfg. Co., 6 Cir., 186 F. 166, 168.

**3.** Craftint Mfg. Co. v. Baker, 9 Cir., 94 F.2d 369, 372; Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 400, 46 S.Ct. 324, 70 L.Ed. 651; Gayler v. Wilder, 10 How. 477, 495, 13 L.Ed. 504

"So, too, as to the lost arts. It is well known that centuries ago discoveries were made in certain arts the fruits of which have come down to us, but the means by which the work was accomplished are at this day unknown. The knowledge has been lost for ages. Yet it would hardly be doubted, if any one now discovered an art thus lost, * * * he would be entitled to a patent. Yet he would not literally be the first and original inventor. But he would be the first to confer on the public the benefit of the invention."

For many years the pertinent principles were contained in Section 4886 of the Revised Statutes (U.S.Code, old Title 35, Section 31*), which reads in part as follows:

"Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, * * * not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than one year prior to his application, and not in public use or on sale in this country for more than one year prior to his application, unless the same is proved to have been abandoned, may * * * obtain a patent therefor."

█ It will be observed that this provision prevents the issuance of a patent for an invention previously known or used by others in this country. This limitation is expressly restricted to the United States. There is no bar against the granting of a patent on an invention known or used by others in a foreign country. The next clause precludes the award of a patent on an invention previously patented or described in any printed publication in this or any foreign country. By contrast, therefore, a foreign patent or a disclosure in a printed publication abroad is a bar. Finally, this provision forbids the issuance of a patent on an invention that has been in public use or on sale in this country for more than one year prior to the application. On the other hand, public use abroad does not hinder the issuance of a patent. Consequently, the law has been that an original inventor who does his work in the United States may receive a patent even if the same invention had been previously made or had been in public use abroad without his knowledge. In respect to activities in a foreign country, the American inventor is barred only if the invention had been patented or described in a printed publication. The reason for this distinction is manifest. It was intended that a domestic inventor should not be charged with knowledge of work previously done abroad unless its results were in a printed publication that would be readily accessible in the United States.

On this basis the courts have ruled that the making or use of an invention in a foreign country is not a bar to the issuance of a patent to an inventor who developed his invention in this country, if he were an original inventor and, therefore, was ignorant of the work that had been done abroad.[4] For the same reason a person who does his work in a foreign country may not establish a date of invention prior to that of the filing date of his first application.

These doctrines were delineated and emphasized by Section 4923 of the Revised Statutes (U.S.Code, old Title 35, § 72**) which reads as follows:

"Whenever it appears that a patentee, at the time of making his application for the patent, believed himself to be the original and first inventor or discoverer of the thing patented, the same shall not be held

---

* Now 35 U.S.C.A. §§ 101, 102, 161.

4. See footnote 3.

** Now 35 U.S.C.A. §§ 102, 104.

to be void on account of the invention or discovery, or any part thereof, having been known or used in a foreign country, before his invention or discovery thereof, if it had not been patented or described in a printed publication."

This was the state of the law, when in 1939 the Supreme Court decided Electric Storage Battery Co. v. Shimadzu, 307 U.S. 5, 59 S.Ct. 675, 83 L.Ed. 1071, on which the plaintiff relies. That case involved an action for an infringement of a group of patents. The inventions were made in Japan, not later than August 1919. The plaintiff's first application for a patent of the United States was filed on January 30, 1922. The defendant, however, had commenced the use of the same invention in 1921 without knowledge of the work that had been done abroad. The Supreme Court, in an opinion written by Mr. Justice Roberts, relying on Section 4923 of the Revised Statutes, quoted above, held that in an infringement action Section 4886 does not limit the plaintiff to the date of the filing of his application, but permits him to prove that the invention was in fact made at an earlier date, just as may be done by the owner of an invention developed in the United States (307 U.S. at page 13, 59 S.Ct. at page 680). The conclusion of the court was that in an infringement suit, a foreign inventor was entitled to the actual date of his invention, even if it preceded the filing date of his application, as against an infringer who commenced the accused activities prior to the filing date but subsequently to the date of the invention abroad. Mr. Justice Roberts expressly recognized, however, that in this respect there was a distinction between an action for an infringement and an interference proceeding, and indicated that in an interference proceeding the foreign applicant is not entitled to an earlier date of invention abroad. He differentiated the two as follows (307 U.S. at pages 12–13, 59 S.Ct. at page 680):

"The petitioner also relies upon R.S. § 4923 * * * The effect of this section is that in an interference between two applicants for United States patent, or in an infringement suit where the alleged infringer relies upon a United States patent, the application and patent for the domestic invention shall have priority despite earlier foreign knowledge and use not evidenced by a prior patent or a description in a printed publication.

"The section, on its face, is without application where the litigation is between the patentee of a foreign invention, or his assignee, and an alleged infringer who defends only in virtue of prior knowledge or use not covered by a patent."

The Court recognized that the distinction at which it arrived was somewhat anomalous and incongruous, for Mr. Justice Roberts added the following comments (307 U.S. at pages 13–14, 59 S.Ct. at page 681):

"There is force in the petitioner's argument that the distinction seems illogical. Thus, if a diligent domestic inventor applies, in good faith believing himself to be the first inventor, § 4923 assures him a patent and gives it priority, despite prior foreign use, * * * The foreign applicant or patentee cannot carry the date of invention back of the date of application in this country, as the holder of a later patent for an invention made here would be permitted to do in order to establish priority. On the other hand, a domestic inventor * * * may be held as an infringer by reason of the later patenting of an invention abroad which antedates the invention and use in this country."

The Congress took cognizance of the inconsistency between giving to the foreign inventor the benefit of his date of invention abroad in an infringement suit, and denying it in an interference proceeding. The problem was solved by Section 9 of the Act of August 8, 1946; 60 Stat. 940, 943; U.S.Code, old Title 35,

Section 109.*** This statute made a number of miscellaneous disconnected amendments to the patent law, some relating to conditions arising out of the exigencies of war, and others constituting permanent legislation. In respect to the subject under discussion, two courses were open to the Congress. One was to accord to foreign inventors the right to have recourse to the date of invention abroad both in infringement suits and interference proceedings. The other was to deprive them of that right in proceedings of both types. The Congress chose the latter alternative. Accordingly, the pertinent provisions of Section 9 of the Act of August 8, 1946, read as follows:

"That in proceedings in the Patent Office and in the courts of the United States an applicant for a patent for an invention, discovery, or a design, or a patentee, shall not be permitted to establish the date of invention or discovery by reference to knowledge or use thereof, or other activity with respect thereto, in a country foreign to the United States, other than the filing in a foreign country of an application for a patent for the same invention, discovery, or design which, in accordance with the provisions of section 4887 of the Revised Statutes, as amended, or in accordance with and subject to the provisions of this Act, is entitled to have the same force and effect as it would have had if filed in the United States on the date on which it was filed in such foreign country: * * *."

An exception, not here material, was made for persons domiciled in the United States, but serving in a foreign country in connection with the prosecution of the war.

While the phraseology of the 1946 statute on this point is clear and unambiguous and actually does not require construction or interpretation, the fact that it was the intent of Congress to correct the anomalous situation resulting from the decision in the Shimadzu case, is explicitly demonstrated by the Committee Reports concerning this legislation, H. Rept. 1498, 79th Congress, 2d Session, dated January 28, 1946; U.S.Code Congressional Service, 1946, pp. 1491–1497. This Report states (p. 7):

"The purpose of this bill is to correct an anomalous situation in the law resulting from a decision of the Supreme Court, Electric Storage Battery Co. v. Shimadzu (307 U.S. 5 [59 S.Ct. 675, 83 L.Ed. 1071]) In this decision the Court sustained a patent granted to a foreigner by permitting the patentee to take evidence in a foreign country showing that he made the invention there, prior to the time of an independent use in this country. This is permitted according to the Court's interpretation of section 4886 of the Revised Statutes * * *

"On the other hand, another section of the Revised Statutes, 4923, by specific provision, prohibits the utilization of acts done abroad for the purpose of defeating a patent, or in interference proceedings. In an interference between two applications for patent, and in an infringement suit where the alleged infringer relies upon a United States patent, proof of prior foreign knowledge and use for the purpose of showing priority over the domestic applicant or patentee is not permitted.

"Thus by virtue of the two different sections of the Revised Statutes, section 4886 as interpreted by the Supreme Court, and section 4923, testimony relating to acts done abroad is accepted in some cases and refused in others.

* * * * * *

"The bill remedies the inconsistency by prohibiting testimony relating to acts done abroad in the cases in which such testimony is now permitted with respect to patent validity, and makes the practice uniform. It is deemed preferable to refuse

*** Now 35 U.S.C.A. § 104.

evidence of foreign activities; not published or patented, in all cases, as this is the greater convenience in trials and other proceedings held in this country."

This statute remained in effect until the enactment of the Act of July 19, 1952, which revised and codified the patent laws, 35 U.S.Code. Section 9 of the Act of 1946 was, in effect, continued in present Section 104, which now reads as follows:

"In proceedings in the Patent Office and in the courts, an applicant for a patent, or a patentee, may not establish a date of invention by reference to knowledge or use thereof, or other activity with respect thereto, in a foreign country, except as provided in section 119 of this title. * * * "

Section 119 of the present Title 35 is substantially a re-enactment of Section 4887 of the Revised Statutes. Its pertinent provisions are as follows:

"An application for patent for an invention filed in this country by any person who has, or whose legal representatives or assigns have, previously regularly filed an application for a patent for the same invention in a foreign country which affords similar privileges in the case of applications filed in the United States or to citizens of the United States, shall have the same effect as the same application would have if filed in this country on the date on which the application for patent for the same invention was first filed in such foreign country, if the application in this country is filed within twelve months from the earliest date on which such foreign application was filed; but no patent shall be granted on any application for patent for an invention which had been patented or described in a printed publication in any country more than one year before the date of the actual filing of the application in this country, or which had been in public use or on sale in this country more than one year prior to such filing."

Sections 104 and 119 must be read together. They are *in pari materia.* The effect of the two provisions is to accord to a foreign inventor the benefit of the filing date of his first application in a foreign country, instead of limiting him to his later filing date in the United States. On the other hand, such an inventor may not avail himself of a still earlier date of invention abroad. This has been the law continuously since the institution of the patent system, except during the short period from 1939 to 1946, when an exception was made for infringement suits only, by the Shimadzu case.

It is urged that Section 104 of the 1952 Act, if applied to Italy, violates the provisions of Article VIII of the Treaty between the United States and Italy, which became effective on July 26, 1949, 63 Stat. 2268, and which provided that nationals of either contracting party shall enjoy within the territory of the other contracting party, all rights and privileges in regard to patents on terms no less favorable than that accorded to the nationals of the other, or to nationals of any third party. If the provisions of the Act of 1952 contravene the Treaty, the former would prevail, since it is a well settled rule of law that a later enactment supersedes a prior Treaty.[5] Actually, however, there is no repugnancy between the Treaty and the statute. The Treaty requires that each country shall extend to nationals of the other, the same rights as are accorded to its own nationals. The statute does not differentiate between citizens of the United States and citizens of Italy. It distinguishes between inventions made in the United States and those developed in a foreign country. A citizen of the United States who lives in Italy and makes his invention there, would be subject to the

---

5. Head Money Cases (Edye v. Robertson), 112 U.S. 580, 596 et seq., 5 S.Ct. 247, 28 L.Ed. 798; Tag v. Rogers, 105 U.S.App.D.C. 387, 390, 267 F.2d 664; Ex parte Green, 2 Cir., 123 F.2d 862, 863.

limitations of Section 104 to the same extent as a citizen of Italy. On the other hand, a citizen of Italy who makes an invention in this country would not be bound by the restrictions.

Finally, it is urged by counsel for the plaintiffs that Section 104 should be deemed applicable only to citizens of a country with which the United States has no treaty. There is no basis, however, for such a construction.

The conclusion is inescapable that a foreign inventor is not entitled to priority as of the date of his invention abroad prior to the date of the filing of his first foreign application, but he is accorded the benefit of that filing date, which may precede the date of the filing of his application in this country. Accordingly, the Court reaches the conclusion that no error was committed by the Board of Patent Interferences in awarding priority to the defendant Hoffman.

It is earnestly urged by able counsel for the plaintiff that this result would lead to an unfair and unjust discrimination as against a foreign inventor vis a vis an American inventor. It permits the American inventor, Hoffman in this instance, to prove the actual date of his invention, but does not allow the same privilege to a foreign inventor. This argument is not without some weight. No doubt the present rule originated in the days when the only means of travel between continents was by sailing ships, and the sole means of communication was by slow mail. Conceivably, under those conditions, an invention made abroad might have never become known in the United States. Today with modern means of travel and communication, information may be transmitted from Europe to the United States as rapidly as from the eastern seaboard to Honolulu and Alaska. With the great increase in the volume of travel between countries, as well as the constant utilization of new means of communication, it might well be argued that the reason for the rule no longer exists. The patent law is, however, entirely statutory and, unlike the common law, may not be molded and adjusted by judicial decisions to meet shifting needs and changing conditions. The Congress alone may afford the remedy, if one is deemed needed.

This opinion will constitute the findings of fact and conclusions of law. Judgment for the defendants.