**Hermann BREUER and Uwe D. Treuner, Appellants,**

**v.**

**Robert M. DeMARINIS, Appellee.**

**Patent Appeal No. 76–668.**

United States Court of Customs and Patent Appeals.

June 30, 1977.

and Trademark Office Board of Patent Interferences (board) which, by summary judgment, awarded priority of invention to DeMarinis. The board concluded that Breuer, the junior-party applicants,[1] had not shown, as required by 37 CFR 1.204(c), prima facie entitlement to an award of priority with respect to the filing date of DeMarinis, the senior-party patentee.[2] We reverse and remand.

## Background

The subject matter of the interference is a group of cephalosphorin compounds possessing antibacterial activity.[3] The sole count reads as follows:[4]

A compound of the formula

where
  $n$ is 0, 1, or 2;
  X is SHet; and
  Het is a 5 or 6-membered heterocylic ring containing carbon and 1–4 atoms selected from the group consisting of N, O, and S, unsubstituted or substituted with one or two substituents selected from the group consisting of alkyl of $C_1$–$C_6$, alkoxy of $C_1$–$C_6$, allyloxy, oxide, halogen, carboxamido, carboxyl, carbalkoxy of $C_1$–$C_6$, mercapto, methylthio, trifluoromethyl, hydroxy, amino, alkylamino and dialkylamino, each undefined alkyl having 1–6 carbon atoms.

Breuer is in the interference on application claim 7, which recites, in effect, the compound having this structural formula:

Merle J. Smith, Princeton, N. J., attorney of record, for appellants.

Alan D. Lourie, Philadelphia, Pa., attorney of record, for appellee; Stuart R. Suter, Philadelphia, Pa., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, SHIRO KASHIWA, Associate Judge, United States Court of Claims.

BALDWIN, Judge.

This is an appeal by Breuer et al. (Breuer) from the decision of the Patent

1. Application Serial No. 499,354, filed August 21, 1974, for "Pyridinylthiomethyl Derivatives of Cyanomethylthioacetylosporins." As shown by the application oath, applicants are citizens of West Germany. They have not claimed the benefit of any earlier-filed patent application. The real party in interest is E. R. Squibb & Sons, Inc.

2. Patent No. 3,883,520, issued May 13, 1975, from application Serial No. 389,407, filed August 17, 1973, for "Substituted Mercaptoacet-

amidocephalosporins." The real party in interest is SmithKline Corporation.

3. Cephalosporin-type antibiotic compounds were involved in Flynn v. Eardley, 479 F.2d 1393, 178 USPQ 288 (Cust. & Pat.App.1973) and In re Arkley, 455 F.2d 586, 59 CCPA 804, 172 USPQ 524 (1972).

4. The count is identical to claim 1 of DeMarinis' patent.

NC –CH$_2$ –S –CH$_2$ –C –NH ... CH$_2$ –S

O (above C)

COOH

The chemical name for this compound is 7–[2–[(cyanomethyl)thio]acetamido]–8–oxo–3–[[(2–pyridyl–*N*–oxide)thio]methyl]–5–thia–1–azabicyclo[4,2,0]–oct–2–ene–2–carboxylic acid. For convenience, we will refer to this compound as Compound A. There is no dispute that Compound A is a cephalosporin compound within the scope of the count.[5]

Breuer added claim 7 by amendment as a modified form of DeMarinis' patent claim 1 to provoke the interference under the provisions of 37 CFR 1.205(a) (Rule 205(a)).[6]

Because Breuer's application was filed "more than 3 months" (actually more than twelve months) after the filing date of De-Marinis' patent, Breuer was required by 37 CFR 1.204(c) (Rule 204(c))[7] to submit affidavits or declarations which would show prima facie entitlement to an award of priority with respect to DeMarinis' filing date (August 17, 1973). Four declarations were submitted to satisfy this requirement. The declarations' contents may be briefly summarized:

(1) Declaration of Breuer (the joint inventors). Breuer declared:

That, as assignors to E. R. Squibb & Sons, Inc., we introduced the concept of the invention to another, delivered a sample of a compound of the invention and had said compound submitted to tests which demonstrated the antibacterial activity of said compound all by employees of said assignee in the United States prior to August 17, 1973;

That said acts are the same as those documented and corroborated by Jack Bernstein, Salvatore J. Lucania and Harold I. Basch in their respective declarations accompanying this declaration and were carried out on our behalf;

That said acts in the United States with respect to the investigation show that concept of the invention was introduced into the United States, that a compound of the invention was introduced into the United States and the said compound was tested and found to be antimicrobially active in the United States, thereby reducing the invention to practice in the United States prior to August 17, 1973, and thereby were sufficient to establish priority of the invention relative to the effective filing date of the patentee * * *.[8]

* * * * * *

(c) When the effective filing date of an applicant is more than 3 months subsequent to the effective filing date of the patentee, the applicant, *before the interference will be declared,* shall file two copies of *affidavits or declarations* by himself, if possible, and by one or more *corroborating witnesses,* supported by documentary evidence if available, each setting out a *factual description of acts and circumstances performed or observed by the affiant, which collectively would prima facie entitle him to an award of priority with respect to the effective filing date of the patent.* This showing must be accompanied by an explanation of the basis on which he believes that the facts set forth would overcome the effective filing date of the patent. Failure to satisfy the provisions of this section may result in summary judgment against the applicant under § 1.228. * * * [Emphasis added.]

---

5. The reduction to practice of a single species within the scope of the count constitutes a reduction to practice of the invention defined by the count for purposes of priority in an interference proceeding. *Mikus v. Wachtel,* 504 F.2d 1150, 183 USPQ 752 (Cust. & Pat.App. 1974); *Den Beste v. Martin,* 252 F.2d 302, 45 CCPA 798, 116 USPQ 584 (1958).

6. § 1.205 Interference with a patent; copying claims from patent.

(a) Before an interference will be declared with a patent, the applicant must present in his application, copies of all of the claims of the patent which also define his invention and such claims must be patentable in the application. However, an interference may be declared after copying the claims excluding an immaterial limitation or variation if such immaterial limitation or variation is not clearly supported in the application or if the applicant otherwise makes a satisfactory showing in justification thereof.

7. § 1.204 Interference with a patent; affidavit [or declaration] by junior applicant.

8. As shown by other declarations discussed infra, the joint inventors were employed in the research laboratories of Chemische Fabrick

(2) Declaration of Bernstein (I). Bernstein declared that, as Assistant Director of Organic Chemistry of the assignee corporation, he received in the United States, prior to August 17, 1973, two reports from Breuer which disclose "a concept of the compound [naming Compound A] as an antimicrobial agent." Photocopies of the pertinent pages of the reports were attached. The second report discloses a proposed method of synthesis for a compound having the structure of Compound A.

(3) Declaration of Lucania (I). Lucania declared that, as Preclinical Research Administrator of the assignee, he received in the United States, prior to August 17, 1973, a document called a "Transmission Record" for Compound A. As shown by the photocopy attached to the declaration, the Transmission Record, a printed form, contains the following typewritten information: (1) company code number for the compound ("67,364"); (2) empirical formula ("$C_{17}H_{16}N_4O_5S_3$"); (3) name of the chemist ("Dr. Breuer"); (4) notebook number; (5) chemical structural formula and chemical name for Compound A; (6) molecular weight, melting point, physical state, solubility, a "NMR"[9] spectrum number, an "IR"[10] spectrum number, elemental analysis (carbon, hydrogen, nitrogen, and sulfur), and purity; and (7) date ("30.1.73"),[11] grams ("70 mg"), batch number, and specific testing requested ("antimicrobial activity"). The Transmission Record also has a handwritten entry "0.07" inserted before the printed language: "[G]rams received by Research Evaluation Office * * *."

Lucania further declared that he received, in the United States prior to August 17, 1973, 0.07 grams of Compound A and that, on behalf of the inventors, he "distributed 10 mg. for analysis and 50 mg. for microbiological testing" as shown by the photocopy of a "Research Chemical Distribution" card also attached to the declaration.

(4) Declaration of Basch (I). Basch declared that, as an Assistant Research Investigator of the assignee, he tested Compound A in the United States prior to August 17, 1973 "for antimicrobial activity by two fold tube dilution assay and confirmed [it] as active." The photocopies of two notebook pages attached to the declaration show that a compound (identified by company code number and by the chemical name for Compound A) was tested for "MIC"[12] by twofold tube dilution assay against some sixteen organisms.

*Order To Show Cause*

Breuer's Rule 204(c) showing was reviewed by an examiner of interferences who, for various reasons, found it insufficient "to make out a *prima facie* case of priority by applicants *vis-a-vis* patentee within the meaning of 37 C.F.R. 1.204(c)." Therefore, concurrent with the declaration of the interference, the examiner of interferences issued against Breuer an Order to Show Cause why summary judgment under 37 CFR 1.228 (Rule 228)[13] should not be

---

von Heyden, a subsidiary of the inventors' assignee (E. R. Squibb & Sons, Inc.), in Regensburg, West Germany. They made a compound, which they say was Compound A, in West Germany and sent a sample thereof to the United States for biological testing.

9. NMR is the abbreviation for nuclear magnetic resonance.

10. IR is the abbreviation for infrared.

11. All other dates in the Transmission Record were blocked out for purposes of the declaration, so this one was shown apparently by inadvertence.

12. MIC is the abbreviation for minimum inhibitory concentration.

13. § 1.228 Summary judgment.

When an interference is declared on the basis of a showing under § 1.204(c), such showing will be examined by an Examiner of Interferences. If the Examiner considers that the facts set out in the showing provide sufficient basis for the interference to proceed, the interference will proceed in the normal manner as provided by the regulations in this part; otherwise an order shall be entered concurrently with the notice of interference pointing out wherein the showing is insufficient and notifying the applicant making such showing that summary judgment will be rendered against him because of such insufficiency at the expiration of a period specified in the notice, not less than 30 days,

entered.

Responding to the Order to Show Cause, Breuer submitted three additional declarations:

(1) Declaration of Bernstein (II). In this declaration, Bernstein declared that he also received a copy of the Transmission Record (referred to in Lucania's declaration (I) above) and furthermore:

That the physical data provided on said Transmission Record is consistent with the structural formula set forth therein and confirmed by the two additional pages accompanying that cover sheet (all pages attached for convenience), the second page of which shows in greater detail *the synthesis of the compound outlined previously* and the third page of which is a copy of *the infrared spectrum which contains the structure identifying peaks noted on the curve*; [14] .

\* \* \* \* \* \*

*That from the foregoing, prior to August 17, 1973, I knew the structure of the compound conceived, synthesized and introduced into the United States* by applicants Breuer and Treuner, the method for synthesizing as an antibacterial agent useful against organisms named above and that *the analytical data submitted supported the structure expected from the method of synthesis.* [Emphasis added.]

(2) Declaration of Lucania (II). Lucania declared, in relevant part:

That I understood the data on said Transmission Record and *it appeared to me to be consistent with the structure provided* and *also with the method of preparation and infrared spectrum attached* hereto \* \* \* ;

\* \* \* \* \* \*

That from these sources *I understood the structure, method of synthesis* and utility as an antibacterial agent of the said compound \* \* \*. [Emphasis added.]

(3) Declaration of Basch (II). In this declaration, Basch declared that the "two fold tube dilution assay is a standard test to determine antibacterial activity and is standard assay for testing cephalosporin derivatives" and he further declared that "the MIC's obtained by \* \* \* [Compound A] shows [sic] that it has good antibacterial activity against the microorganisms [specifying five microorganisms] \* \* \*."

### The Board

The board stated that the declarations submitted on behalf of Breuer prima facie support the following findings of fact: (1) a compound was made in a foreign country; (2) the compound was shipped to Breuer's assignee in the United States; (3) accompanying the compound was a written description of a method which could be used to make Compound A; (4) accompanying the compound was an infrared spectrum, an elemental analysis, and the structural formula for Compound A; (5) "No person analyzed the compound in the United States to determine or confirm its structure as [Compound A]"; and (6) the Basch declarations ((I) and (II)) state the utility of Compound A as an antibacterial agent.

---

unless cause be shown why such action should not be taken. In the absence of a showing of good and sufficient cause, judgment shall be so rendered. Any response made during the specified period will be considered by a Board of Patent Interferences without an oral hearing unless such hearing is requested by the applicant, but additional affidavits, declarations or exhibits will not be considered unless accompanied by a showing in excuse of their omission from the original showing. If the applicant files a response to the order to show cause, the patentee will be furnished with one copy of the showing un-

der § 1.204(c) and will be allowed not less than 30 days from its mailing date within which to present his views with respect thereto. He shall also be entitled to be represented at any oral hearing on the matter. The Board will determine, on the basis of the original showing and the response made, whether the interference should be allowed to proceed or summary judgment should be entered against the junior applicant.

14. An infrared spectrum, bearing the code number "SO67364" and Dr. Breuer's name, is attached to the declaration. It has handwritten notations on several "peaks."

The board then expressed the following opinion:

We are satisfied that a practical utility had been determined for the compound shipped into the United States prior to patentee's filing date. However, we are unable to find that any person acting on behalf of applicants established *in the United States* that the compound shipped into the United States was a compound having a structural formula falling within the scope of the count. It is admitted in applicants' Response to the Order to Show Cause (Paper No. 7) that all the analytical work purporting to establish the identity of the compound shipped into the United States was carried out in Germany. The express wording of 35 U.S.C. 104 [15] precludes reliance on such activities to establish a date of invention, except as to applications filed pursuant to 35 U.S.C. 119 and indeed no application appears to have been filed by applicants pursuant to 35 U.S.C. 119. *Schmierer v. Newton,* 397 F.2d 1010, 55 CCPA 1362, 158 USPQ 203 (1968). [Emphasis in original.]

Inasmuch as *applicants have failed to prove knowledge of the structure in the United States* prior to patentee's filing date, they have not made out a *prima facie* case for all the limitations of the count. Compare *Rochling v. Burton,* 178 USPQ 300 (Bd.Pat.Int.1971) and see *Golota v. Strom,* \* \* \* [489 F.2d 1287, 180 USPQ 396 ([Cust. & Pat.App.] 1974)]. It follows that applicants have failed to make out a *prima facie* case of an actual reduction to practice prior to patentee. While we might agree that applicants have established a conception, we note that applicants have not alleged conception and diligence as part of their *prima*

facie case. [Emphasis, first occurrence, added. Remaining emphases in original.]

Applicants allege that the record is sufficient to permit this case to proceed to the testimony taking period. We disagree. The answers to applicants' arguments are presented in *Kistler v. Weber,* 412 F.2d 280, 56 CCPA 1413, 162 USPQ 214 (1969).

Thus, the board awarded priority of invention by summary judgment to DeMarinis.

*The Issue*

The general question is whether the board erred in holding that the declarations submitted on behalf of Breuer do not set forth what Rule 204(c) requires: "[A] factual description of acts and circumstances performed or observed by the affiant, which collectively would prima facie entitle him [Breuer] to an award of priority with respect to the effective filing date of the patent." The specific issue is whether the board erred in holding that Breuer has not proven prima facie that the compound introduced into the United States was Compound A.

OPINION

Breuer (appellants) rely on 35 U.S.C. § 102(g): "[T]he invention was made in this country \* \* \*." Thus, they contend that they introduced a compound (i. e., Compound A) into the United States and that the invention was completed (actually reduced to practice) in this country by virtue of the successful antimicrobial testing, performed at their request, which demonstrated "a practical utility." [16] Breuer's theory of the case follows established law.[17]

---

**15.** § 104. Invention made abroad.

In proceedings in the Patent [and Trademark] Office and in the courts, an applicant for a patent, or a patentee, may not establish a date of invention by reference to *knowledge* or use thereof, or other activity with respect thereto, *in a foreign country,* except as provided in section 119 of this title. Where an *invention was* made by a person, civil or military, while domiciled in the United States and serving in a foreign country in connection with operations by or on behalf of the United States, he shall be entitled to the same rights of priority with respect to such invention as if the same had been made in the United States. [Emphasis added.]

**16.** DeMarinis does not dispute the board's statement that "a practical utility had been determined for the compound shipped into the United States prior to patentee's filing date."

**17.** *Peeler v. Miller,* 535 F.2d 647, 651, 190 USPQ 117, 120 (Cust. & Pat.App.1976)

Finding of fact (5) by the board reads: "No person analyzed the compound in the United States to determine or confirm its structure * * *." The board then held that, absent such a domestic chemical analysis, Breuer "failed to prove knowledge of the structure in the United States prior to patentee's filing date."

At oral hearing, counsel for DeMarinis (appellee) was asked this question from the bench: "There was knowledge of the structure in the United States prior to the patentee's filing date, wasn't there?" Counsel responded: "I think there was. We don't endorse that aspect of the board's decision." DeMarinis nevertheless supports the board's award of priority to him on the ground that Breuer, "while proving introduction of some invention into this country, did not prove by means of corroborated evidence what it was that was introduced." DeMarinis suggests that such corroboration could have been supplied by a domestic chemical analysis.

Regardless of whether the alleged deficiency in Breuer's showing is characterized as a failure of proof as the board did or as a failure of corroboration as DeMarinis did, the question remains the same: Has Breuer proved prima facie that the compound introduced into the United States was Compound A despite the absence of a domestic chemical analysis? [18]

■ A prima facie showing under Rule 204(c) "calls upon the junior party to *prove* (by way of affidavit(s) setting forth facts) at least so much of his case as would entitle him to an award of priority *if* the senior party were to rely only on his filing date and were not to rebut any of the junior party's case." (Emphasis in original.) *Kistler v. Weber,* 412 F.2d 280, 285, 56 CCPA 1413, 1419–20, 162 USPQ 214, 218

(1969).[19] Furthermore, "the burden on the applicant here is not to prove beyond a reasonable doubt, or even by a preponderance of the evidence, but merely to establish a prima facie case." *Schwab v. Pittman,* 451 F.2d 637, 640, 59 CCPA 720, 725, 172 USPQ 69, 71 (1971). We hold that Breuer has met that burden.

The declarations include, as attachments, the inventors' Transmission Record which clearly discloses the synthesis and chemical structure of Compound A. Bernstein and Lucania both declared that they received the Transmission Record in this country, that it came from the inventors, and that they "knew" or "understood" the chemical structure of the transmitted compound to be Compound A.

DeMarinis argues that this knowledge possessed by Bernstein and by Lucania "came from the inventors themselves" and that, as such, it must be "properly corroborated."

■ Clearly, 35 U.S.C. § 104 does not preclude using evidence of the inventor's knowledge from a foreign country for *all* purposes, but only where it is used to "establish a date of invention." See *Hedgewick v. Akers,* 497 F.2d 905, 182 USPQ 167 (Cust. & Pat.App.1974). Here, the knowledge of the inventors, embodied in the Transmission Record, is admissible evidence to prove the chemical structure of the compound introduced into this country. Cf. *Rebuffat v. Crawford,* 68 F.2d 980, 982, 21 CCPA 901, 904, 20 USPQ 321, 324 (1934) ("[W]ork abroad might be important in determining the identity of the invention * * *.").

Moreover, the Transmission Record document included, in an attachment, the infrared spectrum which, in this case, serves two

---

("[W]ithout an actual reduction to practice there is no invention in existence * * *."); *Bogoslowsky v. Huse,* 142 F.2d 75, 77, 31 CCPA 1034, 1036, 61 USPQ 349, 351 (1944) ("In the eyes of the law the invention is not completed until it has been reduced to practice.").

18. We give no weight, either positive or negative, to the unexplained statement in Lucania's

declaration (I) that he "distributed 10 mg. for analysis." The board's opinion does not mention this statement.

19. Accord, *Golota v. Strom,* 489 F.2d 1287, 180 USPQ 396 (Cust. & Pat.App.1974).

functions: (1) it proves that the knowledge of the structure supplied by the inventors was correct; and (2) it corroborates the inventors' knowledge. As DeMarinis stated in his reply to Breuer's response to the Order to Show Cause: "It is well known that an infrared spectrum is considered a distinctive *fingerprint* for chemical compounds." (Emphasis added.)

Bernstein declared that the infrared spectrum "contains the structure identifying peaks noted on the curve" and that "from the foregoing * * * I knew the structure of the compound." Lucania declared that the Transmission Record "appeared to me to be consistent with the structure provided and also with the * * * infrared spectrum" and that "from these sources I understood the structure." Thus, Bernstein and Lucania declare that the infrared spectrum document is proof of the structure supplied by the inventors and that it also corroborates the inventors' knowledge.

■ We have frequently stated that a "rule of reason" approach is required in determining the type and amount of evidence necessary for corroboration. See *Mikus v. Wachtel,* 542 F.2d 1157, 191 USPQ 571 (Cust. & Pat.App.1976), and cases cited therein. This approach recognizes the realities of technical operations in modern day research laboratories. *Berry v. Webb,* 412 F.2d 261, 56 CCPA 1272, 162 USPQ 170 (1969); *Hurwitz v. Poon,* 364 F.2d 878, 53 CCPA 1502, 150 USPQ 676 (1966).

The board would require proof of a second, domestic infrared analysis.[20] We deem this to be an unreasonable requirement under the circumstances of this case and in view of the realities of modern day research laboratories. Bernstein and Lucania, professional researchers vitally interested in the accuracy of the technical information, did not question the chemical structure supplied by the inventors after viewing the infrared spectrum, the "fingerprint" of

the compound. If the professional researchers saw no reason to question the structure supplied by the inventors, as proved and corroborated by the infrared spectrum, then it would be *unreasonable* to require a second, domestic infrared analysis which would merely duplicate the infrared spectrum made abroad and sent here as an attachment to the Transmission Record. Thus, the declarations of Bernstein and Lucania, which specifically refer to the infrared spectrum, provide sufficient evidence to prove prima facie the fact that the compound introduced into the United States was Compound A.[21]

We are satisfied that Breuer has proved prima facie that the compound which was introduced into this country was Compound A and that Breuer met the requirements of Rule 204(c). Accordingly, the decision of the board awarding priority of invention by summary judgment to DeMarinis is *reversed* and the case is *remanded* for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*

---

**20.** DeMarinis does not argue that the infrared spectrum provided by the inventors does not, in fact, identify Compound A. Nor does DeMarinis argue that the second infrared analysis must be domestic.

**21.** In *Rochling v. Burton,* 178 USPQ 300 (Bd. Pat.Int'f.1971), cited by the board herein, the opinion does not refer to an infrared spectrum for the compounds in question, so it is assumed there was no infrared spectrum in evidence.