**Leo WIESNER, Appellant,**

v.

**Hans WEIGERT, Appellee.**

**Appeal No. 81–571.**

United States Court of Customs and Patent Appeals.

Dec. 10, 1981.

. Charles W. Helzer, Arlington, Va., for appellant; William C. Crutcher, Waterbury, Conn., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

MARKEY, Chief Judge.

Junior party Wiesner appeals the determination of the Board of Patent Interferences (board) awarding priority to senior party Weigert. We *affirm.*

*Background*

Involved are Wiesner application filed March 10, 1975 and Weigert Patent No. 3,934,241 filed November 13, 1974. Wiesner filed a preliminary statement, took deposition testimony, filed a transcript and documentary exhibits, and submitted a brief for final hearing. He waived appearance at oral argument. Weigert did nothing, and is therefore restricted to his November 13, 1974 filing date. Wiesner attempted to prove conception and reduction to practice in late 1971 or early 1972.

The subject matter is defined by a single count drawn to an electronic timepiece having a liquid crystal display (LCD) device in which electrode segments are as radial lines. Successive actuation of the segments provides a visual simulation of the moving hands of a watch. Grouping and interconnection of the electrode segments avoids crossovers in the interconnections. A drive circuit achieves the necessary sequence of actuation.

Basically, the count defines the combination of an LCD and its driving circuit. Extensive functional language overlaps structural components. The count, corresponding to claim 1 of Weigert's patent and claim 15 of Wiesner's application, recites:

*Count 1*

Analog display utilizing liquid crystal material and for being multiplexed, comprising:

a plurality of groups of segments disposed adjacent to each other in a predetermined pattern, with regard to a predetermined direction, the segments in each group being disposed of in a sequence opposite to the sequence in which the segments of the next adjacent group are disposed, and each segment in each group corresponding to one of the segments in each of the other groups and all corresponding segments in all groups being connecting [sic] electrically in a series connection;

a plurality of sectors disposed adjacent to each other and in said predetermined pattern, each of said sectors disposed opposite to one of said groups of segments and displaced therefrom;

a body of liquid crystal material disposed between said plurality of input leads, each of said input leads being connected electrically with one of said series connections of said corresponding segments; and

a second plurality of input leads each of said input leads being connected electrically to one of said sectors, wherein said body of liquid crystal material is in a first optical state and wherein each portion of said body of liquid crystal material is in a first optical state and wherein each portion of said body of liquid crystal material disposed between one of said segments and one of said sectors is capable of changing into a second optical state upon an electric field being established thereacross by a first input signal being applied to said one segment and by a second input signal being applied to said one sector, and said analog display further comprising;

means for applying first input signals to said first plurality of input leads in a first predetermined sequence with regard to said predetermined direction upon a second input signal being applied to a predetermined one of said sectors, and for applying said first input signals to said first plurality of input leads in a sequence opposite to said first predetermined sequence and with regard to said predetermined direction upon said second input signal being applied to the sector next adjacent to said predtermined [sic] one of said sectors whereby the portions of said body of liquid crystal material disposed between said segments and said sectors change from said first optical state into said second optical state sequentially in said predetermined direction.

Upon review of Wiesner's preliminary proofs under Rule 204(c)[1] the board found

---

1. 37 CFR § 1.204(c) (Rule 204(c)) *Interference with a patent; affidavit or declaration by junior applicant.*

\* \* \* \* \* \*

(c) When the effective filing date of an applicant is more than 3 months subsequent

them *prima facie* insufficient to entitle Wiesner to priority. The board cited deficiencies in Wiesner's affidavits, including unsupported conclusory statements about his alleged reduction to practice and failure to establish correspondence between whatever may have been actually reduced to practice and the combination of the count. The board therefore issued an order to show cause why summary judgment should not be issued against Wiesner under Rule 228.[2]

In response, Wiesner submitted additional affidavits and exhibits. The board found that those additional materials, "prima facie, establish conception and actual reduction to practice by the end of 1971 and efforts toward perfection of the invention and filing which would obviate a finding of unreasonable delay from then until filing in 1975." The interference was allowed to proceed.

In its determination of priority, the board reviewed all of Wiesner's submissions to ascertain whether he had met his burden by a preponderance of the evidence, noting that proof of priority of invention must encompass all structural and functional limitations of the count. The board refused to consider Wiesner's affidavits because they did not comply with the rules governing submission of evidence in an interference[3], stating:

2. to the effective filing date of the patentee, the applicant, before the interference will be declared, shall file two copies of affidavits or declarations by himself, if possible, and by one or more corroborating witnesses, supported by documentary evidence if available, each setting out a factual description of acts and circumstances performed or observed by the affiant, which collectively would prima facie entitle him to an award of priority with respect to the effective filing date of the patent. This showing must be accompanied by an explanation of the basis on which he believes that the facts set forth would overcome the effective filing date of the patent. Failure to satisfy the provisions of this section may result in summary judgment against the applicant under § 1.228. Upon a showing of sufficient cause, an affidavit or declaration on information and belief as to the expected testimony of a witness whose testimony is necessary to overcome the filing date of the patent may be accepted in lieu of an affidavit or declaration by such witness. If the examiner finds the case to be otherwise in condition for the declaration of an interference he will consider this material only to the extent of determining whether a date prior to the effective filing date of the patent is alleged, and if so, the interference will be declared.

2. 37 CFR § 1.228 (Rule 228) *Summary judgment.*

When an interference is declared on the basis of a showing under § 1.204(c), such showing will be examined by an Examiner of Interferences. If the Examiner considers that the facts set out in the showing provide sufficient basis for the interference to proceed, the interference will proceed in the normal manner as provided by the regulations in this part; otherwise an order shall be entered concurrently with the notice of interference pointing out wherein the showing is insufficient and notifying the applicant making such showing that summary judgment will be rendered against him because of such insufficiency at the expiration of a period specified in the notice, not less than 30 days, unless cause be shown why such action should not be taken. In the absence of a showing of good and sufficient cause, judgment shall be so rendered. Any response made during the specified period will be considered by a Board of Patent Interferences without an oral hearing unless such hearing is requested by the applicant, but additional affidavits, declarations or exhibits will not be considered unless accompanied by a showing in excuse of their omission from the original showing. If the applicant files a response to the order to show cause, the patentee will be furnished with one copy of the showing under § 1.204(c) and will be allowed not less than 30 days from its mailing date within which to present his views with respect thereto. He shall also be entitled to be represented at any oral hearing on the matter. Unless it shall be otherwise ordered before the hearing begins, oral arguments will be limited to not more than 30 minutes for each party. The Board will determine, on the basis of the original showing and the response made, whether the interference should be allowed to proceed or summary judgment should be entered against the junior applicant.

3. The pertinent rules of practice governing testimony in interferences are:

37 CFR § 1.271 (Rule 271) *Evidence must comply with rules.*

Evidence touching the matter at issue which shall not have been taken and filed in compliance with this part will not be considered in determining the interference or other proceeding.

37 CFR § 1.272 (Rule 272) *Manner of taking testimony of witnesses.*

Several "exhibits" (Exhibits 1, 3, 4, 5, 6) are purported copies of affidavits which had been submitted under Rules 204(c) and 228. During the depositions the respective witnesses were asked to affirm the accuracy of their affidavits marked as exhibits but were not asked to read them into the testimony record. We will give no consideration to these affidavits for in our view they are barred by Rule 271 which prohibits noncomplying evidence under Rule 272. The testimony in this interference is required to be "by depositions on oral examination" under Rule 272(a) because there is no "agreement by the parties" under Rule 272(c) permitting testimony in affidavit form. The waiver provisions of Rule 285 do not apply to Rule 272 and the authority to otherwise waive the rules resides solely in the Commissioner and not in this board. It is the view of this board that a party should not be permitted to circumvent the clear mandate of Rules 271 and 272(a) by the mechanism of calling a witness in order to submit affidavit testimony under the guise of an exhibit. Cf. the concurring opinion in *Inoue v. Lobur*, 195 USPQ 256 (BPI 1976).

(a) The testimony of witnesses shall be taken by depositions on oral examination in accordance with the regulations in this part.

(b) If the parties so stipulate in writing, deposition may be taken before any person authorized to administer oaths, at any place, upon any notice, and in any manner, and when so taken may be used like other depositions. By agreement of the parties, provided the Commissioner consent, testimony may be taken before an officer or officers of the Patent and Trademark Office under such terms and conditions as the Commissioner may prescribe.

(c) By agreement of the parties, the testimony of any witness or witnesses of any party may be submitted in the form of an affidavit by such witness or witnesses. The parties may stipulate what a particular witness would testify to if called, or the facts in the case of any party may be stipulated. When evidence is submitted in one of these forms, four copies of such affidavit or stipulated testimony (§ 1.253(a), (c), (f)) are required.

37 · CFR § 1.285(c) (Rule 285(c)) *Effect of errors and irregularities in depositions.*

The board also refused to consider portions of the testimony of Rabinowitz and Willis. Because their competence in electronics had not been established, they were deemed unqualified to corroborate conception and reduction of the means for applying first input signals (driving circuit) defined by the count. Their testimony concerning the LCD display was accepted. The board found witness Cohen technically qualified in all respects. Affidavits affirmed by Rabinowitz, Willis and Cohen during their oral testimony were, as above indicated, refused consideration. A fourth affiant, Suppa, did not testify.

Cohen's oral testimony was found insufficient to corroborate conception or reduction to practice of the driving circuit. In response to counsel's questions concerning the operation of a driving circuit constructed in accordance with the count, Cohen recalled a problem occurring in February 1972 associated with leakage currents, causing undesirable lighting of segments of the LCD. Cohen's testimony is barren of any indication that the leakage problem was solved.

Though Cohen testified that he understood the invention described in exhibit "A" to function as recited in the count, he added that "I did not implement it that way...."

Notice will not be taken of merely formal or technical objections which shall not appear to have wrought a substantial injury to the party raising them; and in case of such injury it must be made to appear that, as soon as the party became aware of the ground of objection, he gave notice thereof.

\* \* \* \* \* \*

(c) *As to taking of deposition.* (1) Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

(2) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of the parties, and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition.

Cohen's testimony does not reveal whether the driving circuit actually constructed functioned in accordance with the count.

The board found Cohen's testimony evidence of conception of only a result, and thus insufficient to corroborate conception of the invention defined in the count, because it failed to corroborate conception of means for putting the invention into practice. The board went on to note the absence of evidence on whether such means would have been within the ordinary skill of the art.

The board also found the entire testimony insufficient to corroborate a reduction to practice of the invention. Noting differences between the "generations" of LCD's and a series of driving circuits, the board concluded that there was no independent corroboration of successful operation of an LCD in combination with a driving circuit within the count language. The board also remarked upon Cohen's statements regarding leakage problems with the driving circuit as indicating that there was never a conviction of success in the combination actually tested.

Responding to Wiesner's proof of diligence and to counsel's assertions concerning suppression and concealment, the board said there was insufficient evidence to establish diligence between the alleged conception and filing dates or to overcome an inference of suppression or concealment following the alleged date of reduction to practice.

## OPINION

■ Wiesner argues unpersuasively that the board erred in refusing to consider his preliminary statement and its attached exhibits. Rule 223(d)[4] prescribes:

Rule 223 Effect of statement

\*　　\*　　\*　　\*　　\*　　\*

(d) The preliminary statement can in no case be used as evidence in behalf of the party making it.

In line with *Moran v. Paskert*, 205 USPQ 356, 359 (Bd.Pat.Int.1979); *Brecker v. Jen-*

[4.] 37 CFR § 1.223(d).

*nings*, 204 USPQ 668, 670 (Bd.Pat.Int.1978), the board correctly gave no consideration to the preliminary statement as part of Wiesner's proof of priority.

■ Equally unpersuasive is Wiesner's challenge of the board's refusal to consider, in determining priority, the affidavits submitted under Rules 204(c) and 228. Under Rule 228 the board considers affidavits filed under Rule 204(c) in determining only "whether the interference should be allowed to proceed or summary judgment should be entered against the junior applicant." Those affidavits cannot be used to establish priority absent consent of the parties. *Methudy v. Roy*, 20 CCPA 1142, 65 F.2d 171, 17 USPQ 505 (1933); *Morris v. Stephen*, 188 USPQ 713 (Comm'r Pat.1975). Non-participation of the senior party does not relieve the junior party of his customary burden to establish priority of invention by a preponderance of evidence under the established rules of practice. *See Reese v. Hurst*, 661 F.2d 1222, —— USPQ —— (Cust.& Pat.App.1981).

Wiesner did not rely exclusively on his previous submission of affidavits under Rule 204(c). Each witness at his deposition was asked to review his affidavit for accuracy and completeness, and to reaffirm its contents. Those affidavits were marked as exhibits. The board considered oral affirmation of the contents of the affidavits a device to circumvent the rules. We cannot agree.

■ The board's interpretation of its own rules is entitled to great weight. *See, e.g., Cook v. Dann*, 522 F.2d 1276, 188 USPQ 175 (CCPA 1975). A requirement that witnesses must not only affirm prior statements but also read them into the record, however, would merely exhalt form over substance. Rule 285, which encourages seasonable objection to irregularities in the taking of depositions, would not permit the *replacement* of oral examination by affidavit, absent agreement under Rule 272(c). Nothing in the rules, however, precludes reference to and affirmation of an affidavit

or other prior statement during the course of an oral examination, where the document is before the deponent, is made an exhibit, and the witness is subject to cross-examination. The purpose of Rule 272's requirement that interference testimony be taken on oral examination is to preserve the right of cross-examination. Rivise & Caesar, *Interference Law and Practice*, Vol. 3, § 412 (1947). That purpose is not served by requiring that a witness not only affirm but also read into the record his prior statements, nor is that purpose impeded by permitting incorporation of the statements by reference, where, as here, the opposing party declines to attend and thus foregoes cross-examination.[5] We conclude that the board erred in refusing to consider the statements in the affidavits affirmed by the deponents on oral examination as part of their deposition testimony in this case.[6]

In the interest of judicial economy, we consider the evidence refused consideration by the board.[7] *See In re Fielder*, 471 F.2d 640, 176 USPQ 300 (CCPA 1973). All three affirmed affidavits corroborate conception in 1971 of the invention defined in the counts. Rabinowitz' affidavit says little respecting driving circuits. The substantially identical Willis and Cohen affidavits are, however, quite detailed. Those affidavits not only expressed the affiants' understanding that the concept disclosed in Wiesner's in-house disclosure of June 9, 1971 (exhibit "A") included all claimed features, but specifically addressed the board-noted evidentiary void surrounding the driving circuit. Both affidavits say that exhibit "A" disclosed a device wherein:

> The display is actuated by the application of a potential coincidentally across a segment and a sector associated with the segment. The display is capable of being actuated in any desired sequence or randomly to actuate a selected segment.

The display is capable of being multiplexed and has groups of segments with each group having a corresponding sector so that each segment can be addressed for actuation. The notation that an up-down counter of eight can be used to address the segments in an analog manner in cooperation with the sector energization was intended to describe a means for applying input signals wherein input signals are applied to a first plurality of input leads/terminals in a first predetermined sequence with regard to a predetermined direction upon a second input signal being applied to a predetermined one of the sectors, and for applying the first input signal(s) to the first plurality of input leads, e.g., the eight segment input terminals in a sequence opposite to the first predetermined sequence and with regard to the predetermined direction upon the second input signal or potential being applied to the sector next adjacent to the predetermined one of the sectors whereby the portions of liquid crystal material disposed between the segments and the sectors change from a first optical state into a second optical state sequentially in the predetermined direction, e.g., clockwise to give the appearance of moving a minute hand of a timepiece.

The incorporation of the above statements into the oral testimony by affirmation met Wiesner's evidentiary burden to corroborate conception of the invention. The same cannot be said respecting his burden of establishing reduction to practice however. The omissions and contradictions noted by the board in the oral testimony concerning reduction to practice are not cured in the affidavits refused consideration by the board. Indeed, the affidavits contain additional contradictions respecting reduction to practice.

---

5. A non-attending party also foregoes the right to object to the form of a question. Rule 285(c)(2) (37 CFR 1.285(c)(2)).

6. The board correctly refused to consider the affidavit of Suppa, who was not deposed and thus was not available for cross-examination.

7. For convenience, we refer to the excluded portions of the depositions as affidavits.

The Cohen and Willis affidavits state that in 1971 they witnessed operation of a device including an LCD and "signal input circuit means" for actuating it. It is unclear, however, whether Cohen or Willis was referring to input leads to the LCD or to the "means for applying first input signals" recited in the count. Nowhere in their affidavits do Cohen or Willis state *when* a means for applying first input signals was reduced to practice. That confusion is not alleviated anywhere in Cohen's testimony, which fails to establish the nature of whatever driving circuit may have been actually implemented.

Wiesner's assertion that the affidavits corroborate reduction to practice in 1971 is undercut by the remainder of Cohen's oral testimony, which indicates that throughout his involvement with the project significant unresolved problems were perceived to exist in producing a working embodiment of the invention. Cohen also describes other problems with the voltage level required to drive the LCD's. Only when new field effect crystals were used did the required voltage level become low enough to employ a practical power supply compatible with the intended use.[8]

Wiesner contends that three embodiments of the invention were reduced to practice in 1971: one including a driving circuit built by Wiesner himself and requiring manual energization of the LCD segments; another including a Motorola-built driving circuit; and a third including an improved driving circuit developed by Cohen in accordance with exhibit "PQ" dated September 28, 1971. Cohen and Willis say in their affidavits, and Cohen repeats in his deposition that the third embodiment was made and tested in 1971. Cohen's oral testimony, however, establishes that the driving circuit problems he had acknowledged remained present after the date of alleged reduction to practice appearing in all of the affidavits. Those continuing problems impel the conclusion that none of the devices constructed in 1971 was considered a successful embodiment of the invention.

 It is well established that (excepting plant and design inventions) an invention is not reduced to practice until its practicability or utility is demonstrated pursuant to its intended purpose, *Conner v. Joris*, 44 CCPA 772, 241 F.2d 944, 113 USPQ 56 (1957); Rivise & Caesar, *Interference Law and Practice*, Vol 1, §§ 138, 139 (1940), though reduction to practice of a commercially saleable product is not required. *Steinberg v. Seitz*, 517 F.2d 1359, 186 USPQ 209 (CCPA 1975). Cohen's testimony indicates that the embodiments tested in 1971, as described in the affidavits, were not considered successful for their intended purpose and therefore had no recognized utility. *See Landon v. Ginzton*, 41 CCPA 950, 214 F.2d 160, 102 USPQ 230 (1954). The absence of proof of a successful operation of the invention is fatal to Wiesner's claimed reduction to practice. *Corona Cord Tire Co. v. Dovan Chemical Corp.*, 276 U.S. 358, 383, 48 S.Ct. 380, 387–88, 72 L.Ed. 610 (1928). Accordingly, the board did not err in determining that Wiesner failed to meet his burden of establishing, with corroboration, an actual reduction to practice before Weigert's filing date.[9]

Wiesner's failure to establish an actual reduction to practice meant that his burden included proof of diligence from the June 9, 1971 date of conception to his March 10, 1975 filing date. Though it concluded that conception had not been corroborated, the board went on to find Wiesner's proof of diligence unconvincing:

From the end of the 1971 to early 1972 period, when the Motorola circuit and Cohen circuit activities were supposed to have occurred, until [Patent Attorney] Hager was assigned the case in August, 1974 the time is accounted for by the brief's reliance on the Cohen and Rabinowitz testimony in the footnote at brief

---

8. Wiesner does not rely on the embodiment including field effect crystals combined with a Suppa driving circuit as a reduction to practice.

9. In view of our conclusion, it is unnecessary to discuss the board's determinations regarding qualifications of witnesses, suppression, or concealment.

page 22. This Cohen testimony (R–75, 76) only provides a general allegation that efforts continued; the Rabinowitz testimony does the same (R–38, 42, 43). This is insufficient to establish diligence by evidence definite as to dates and facts. *Kendall v. Searles*, 36 CCPA 1043, 173 F.2d 986, 81 USPQ 363, 369 (1949). The same deficiency resides in the attorney activity testimony mentioned previously. The affirmed affidavits not considered by the board contain merely the same general allegations of continuing activity. Though evidence of constant effort is not required to establish reasonable diligence, the present record contains insufficient evidence to show diligence during the nearly four years until filing. It is not for this court to speculate on possible explanations for that delay. *In re Nelson*, 57 CCPA 893, 420 F.2d 1079, 164 USPQ 458 (1970). The board did not err in finding an insufficient showing of reasonable diligence.

Accordingly, the decision of the board awarding priority of invention to Weigert is *affirmed.*

AFFIRMED.