**John K. SHURIE, Appellant,**

v.

**Wesley Q. RICHMOND, Appellee.**

**No. 82–581.**

United States Court of Appeals,
Federal Circuit.

Feb. 14, 1983.

Rufus M. Franklin, Worcester, Mass., for appellant.

Raymond W. Green, Chicago, Ill., for appellee. With him on the brief were Hume, Clement, Brinks, Willian & Olds, Ltd., Chicago, Ill., and R. Lawrence Sahr, Cleveland, Ohio.

Before MARKEY, Chief Judge, and RICH and DAVIS, Circuit Judges.

OSCAR H. DAVIS, Circuit Judge.

Senior party John K. Shurie appeals under 35 U.S.C. § 141 (1976) from a decision of the Board of Patent Interferences of the Patent and Trademark Office (the Board) in interference No. 99,667. The board awarded priority of invention to junior party Wesley Q. Richmond. We affirm.

## I

The subject of the interference is a process for producing metal oxides which could be employed as abrasive particles for grinding purposes when crushed. The sole count in interference describes the invention as:

A process for making fusion cast metal oxides comprising pouring a molten mass of metal oxide into a mold containing metal cooling-spheres thereby causing the molten mass to rapidly cool and solidify in the interstices between the metal cooling-spheres.

In accordance with 37 C.F.R. § 1.272(c) (1981), the parties stipulated the following facts. Shurie conceived the process of the count, in March 1968, in Canada.[1] Employ-

ees of Shurie's assignee, the Norton Company, performed the process defined by the count in Canada in April 1969. Thereafter, in January 1970, Shurie (or his assignee) performed grinding tests within the United States to demonstrate the commercial utility of the abrasive produced by the process. Neither Shurie nor Norton performed the process in the United States prior to Shurie's filing of a patent application (serial number 112,715) in the United States on February 4, 1971.

On the other hand, Richmond did not conceive the process defined by the count until May 1970. Nonetheless, in December 1970, he (or his assignee, the Carborundum Company) performed the process. Most importantly, Richmond both conceived and performed the process in the United States. Finally, on June 15, 1971, Richmond filed a United States patent application (serial number 153,302) which disclosed the process and satisfactorily described the utility of the product made by the process.

Following preliminary proceedings, the Board issued its opinion in February 1982. The Board found that Richmond proved actual reduction to practice of the invention by December 8, 1970—the date on which Richmond (or his assignee) performed the process in this country. In so finding, the Board relied upon uncontroverted testimony by Richmond's experts that the utility of Richmond's product was apparent upon the making of the product through the process recited in the interference count, thus obviating the need for any further tests to demonstrate commercial or other usefulness of the product.

Examining Shurie's case, the Board held that he failed to prove that he made the invention of the process in the United States prior to Richmond's reduction to practice. In the Board's view, Shurie did not actually invent the entire process in the United States, as the process steps were

---

1. The Board noted that Shurie also conceived the invention in the United States about March 29, 1968, but he did not allege diligence from before Richmond's conception date to his own filing date.

completed in Canada.[2] The Board also reasoned that Shurie's grinding tests in the United States were not required to demonstrate the utility of the Canadian-produced product, because the utility of the abrasive was already obvious. The Board concluded that Shurie was restricted to his filing date and it awarded priority of invention to Richmond.

## II

Shurie bases his claim that the Board erred in awarding priority of invention to Richmond on two premises. First, he contends, by importing the crude abrasive produced by the process from Canada to the United States and demonstrating the utility of the abrasive through grinding tests performed here, he made the invention "in this country" in accordance with 35 U.S.C. § 102(g) (1976).[3] Second, appellant argues that Richmond failed to reduce the process to practice prior to Shurie's filing date because Richmond's performance of the process did not test the utility of the abrasive product in an adequate fashion. These contentions are as unpersuasive to us as they were to the Board.

■■■ Congress has twice provided that, with exceptions irrelevant here, an inventor claiming entitlement to a patent in this country must demonstrate that he reduced the invention to practice in the United States. See 35 U.S.C. §§ 102(g), 104 (1976);[4] I C. Rivise & A. Caesar, Interference Law and Practice §§ 132–33, at 396–97 (1940). An actual reduction to practice

in Canada is irrelevant in an interference proceeding concerning priority of invention. Wilson v. Sherts, 81 F.2d 755, 760, 28 USPQ 381, 383–84 (Cust. & Pat.App.1936); see Monaco v. Hoffman, 189 F.Supp. 474, 127 USPQ 516 (D.D.C.1960), aff'd, 293 F.2d 883, 130 USPQ 97 (D.C.Cir.1961) (per curiam). The invention here is a process; the count in interference involves only that process, not the product. Shurie concedes that he carried out the process in Canada only; because he never performed that process in the United States, Shurie is restricted to his filing date. It follows that the burden rests on him to make an affirmative showing of diligence from just prior to Richmond's conception to Shurie's filing date. See section 102(g), note 3 supra; Morway v. Bondi, 203 F.2d 742, 748, 97 USPQ 318, 322 (Cust. & Pat.App.1953). As the Board noted in its opinion (see supra note 1), Shurie has made no assertions whatsoever with respect to diligence.

■■ Undaunted, Shurie urges that he was required to test the crude abrasive produced by the process (in order to complete the reduction to practice of the process) because the utility of the abrasive product was not "obviously apparent." Stipulated and uncontroverted testimony demonstrates, however, that the utility of the product created by the process was indeed apparent; Shurie cannot therefore integrate the unnecessary grinding tests he performed in the United States onto the actual performance of the process in Canada to

---

2. The Board said, broadly, that a party cannot prevail in an interference proceeding by proving that he made part of the invention in the United States, that part being the last step necessary to complete the invention. That unqualified statement may be too broad as to product inventions. See Breuer v. DeMarinis, 558 F.2d 22, 194 USPQ 308 (Cust. & Pat.App. 1977), discussed infra in Part II.

3. Section 102(g) provides:
    A person shall be entitled to a patent unless —* * * (g) before the applicant's invention thereof *the invention was made in this country* by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not

only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other. (Emphasis added).

4. Section 102(g) is set forth in note 3, *supra.* Section 104 provides in pertinent part:
    In proceedings in the Patent Office and in the courts, an applicant for a patent, or a patentee, may not establish a date of invention by reference to knowledge or use thereof, *or other activity with respect thereto,* in a foreign country, except as provided in sections 119 and 365 of this title. * * * *. (Emphasis added).

claim a reduction to practice of the process prior to his filing date.[5]

■ Shurie erroneously relies on *Breuer v. DeMarinis,* 558 F.2d 22, 194 USPQ 308 (Cust. & Pat.App.1977). He notes that the invention in *Breuer,* a chemical compound, was conceived and produced abroad, but tested in the United States. The Court of Customs and Patent Appeals, whose precedents are binding upon this court (*see South Corp. v. United States,* 690 F.2d 1368, 1370, 215 USPQ 657, 658 (Fed.Cir.1982)), held that the declarations and other documentation accompanying the introduction of the compound into the United States were sufficient to identify its chemical structure. But in *Breuer* only the *product compound* was contained in the count in interference. There was no process count before the court. *Breuer, supra,* 558 F.2d at 23–24, 194 USPQ at 309. Here, by contrast, the count concerns only a process—which was never performed by Shurie in the United States. We agree with the Board that the importation into the United States of a product produced by a particular process is not equivalent, for patent entitlement purposes, to the performance of the process in the United States. Though a showing of the utility of the product made by the process is necessary for patentability (*Brenner v. Manson,* 383 U.S. 519, 534–35, 86 S.Ct. 1033, 1041–42, 16 L.Ed.2d 69, 148 USPQ 689, 695–96 (1966)), the heart of a process invention is the process itself.[6]

### III

■ We also join the Board in holding that Richmond successfully adduced a preponderance of the evidence to prove that he completed the invention in this country prior to Shurie's filing date of February 4, 1971. Generally, the invention of a process is completed, or reduced to practice, when it is successfully performed. *Corona Cord Tire Co. v. Dovan Chemical Corp.,* 276 U.S.

358, 383, 48 S.Ct. 380, 387, 72 L.Ed. 610 (1928); I C. Rivise & A. Caesar, Interference Law and Practice § 131, at 395 (1940); cf. *Wiesner v. Weigert,* 666 F.2d 582, 588, 212 USPQ 721, 726 (Cust. & Pat.App.1981). When the invention to be reduced to practice is a process, the product of that process must have utility. *See Brenner v. Manson, supra,* 383 U.S. at 534–35, 86 S.Ct. at 1041–42, 148 USPQ at 695–96; *Anderson v. Natta,* 480 F.2d 1392, 1395, 178 USPQ 458, 460 (Cust. & Pat.App.1973).

■ Richmond has met these requirements for the reduction to practice of the process before us. The parties stipulated that Richmond performed the operation defined by the process count within the United States on December 8, 1970. The product of that operation was a fusion cast metal oxide or crude abrasive; as we have already noted, Richmond offered the uncontroverted testimony of two experts in the field of abrasives technology to show that the oxide possessed apparent utility as an abrasive for grinding purposes (when ground or crushed) to those well-versed in the abrasives field.

Despite this unrebutted testimony with respect to utility, Shurie argues that it was necessary for Richmond to conduct grinding tests, using the crushed oxide produced by the process to establish utility. Without such testing, Shurie says Richmond has demonstrated utility merely "equivalent to that of the poorest known abrasive grit material." *See supra* note 5.

■ In making this argument Shurie fails to appreciate the narrow formulation of the interference count involved in this appeal, which fails to indicate the intended use of the process. When, as in the count in question, the intended use of an invention is not indicated in the count, evidence demonstrating substantial utility for *any* purpose is enough to show reduction to practice. *Anderson, supra,* 480 F.2d at 1395, 178 USPQ at 460; *Campbell v. Wett-*

---

5. The tests appellant actually performed did not simply measure the mere utility of the product but whether it was equal in abrasiveness to the existing commercial product.

6. In addition, as the Board correctly found (*see infra* Part III), it was unnecessary to test *this* product at all in order to show utility, and the Shurie testing in the United States was wholly superfluous for patent purposes.

*stein,* 476 F.2d 642, 646–47, 177 USPQ 376, 379 (Cust. & Pat.App.1973). The expert testimony supplied by Richmond was sufficient for this purpose; he was not required to demonstrate commercial acceptability, *see Wiesner, supra,* 666 F.2d at 588, 212 USPQ at 726, but only that the oxide produced by the process can be employed in some useful fashion—as abrasive particles for grinding, for example. Richmond plainly met this burden.

In short, the Board was correct in awarding priority of invention to Richmond. Its decision is affirmed.

AFFIRMED.