NEWMAN, Circuit Judge,
dissenting.
The court today creates a new class of secret prior art, holding that a privately performed experiment, without publication or public knowledge or use or sale or inclusion in a United States patent application, is invalidating “prior art.” Heretofore the role of secret prior art has been carefully circumscribed. The new general rule here adopted contravenes the policy and the letter of patent law, wherein inventors are charged only with knowledge of what is known or knowable as defined by statute, subject to special limited circumstances.
The panel majority holds that private secret activity — in this case Honeywell’s evaluation of Russian technology that had been invented in Russia and placed in an unpublished Russian patent application — is “prior art” against all others, thereby invalidating the Solvay patent. The panel majority does not recognize the unavailability of an interference contest, for there is no United States counterpart to the Russian patent application.
In the prior appeal of this case, Solvay S.A. v. Honeywell Int’l, Inc., 622 F.3d 1367 (Fed.Cir.2010) (Solvay I), this court confirmed that the Russian invention was conceived and reduced to practice in Russia, and that Honeywell’s repetition of the process in the United States was not an invention made in the United States. Testing the invention of another is not an act of invention by the tester. This aspect was finally resolved in Solvay I, the court describing Honeywell’s work in the United States as a “derivation” of the Russian invention. The matter was finally decided; it is not open for redetermination.
Undaunted, the panel majority now rules that Honeywell’s activity was a “reduction to practice” of the Russian process. The private/secret duplication of the prior invention of another does not convert either that prior invention or its duplication into prior art. The issue here is not priority between the Russian invention and the Solvay invention; the issue is prior art against the world.
The Honeywell test of the Russian process was a private experiment. No United States patent application was filed on the Russian process, not by Honeywell and not by the Russian inventors. A private experiment is not prior art, when it is not published, nor used, sold or otherwise made known, nor included in a United States patent application.
The panel majority concedes that the Russian process was conceived and reduced to practice in Russia and placed in a Russian patent application, for which no corresponding United States application was filed. Nonetheless the panel majority holds that the Russian invention was “made in this country,” maj. op. at 1007, because it was privately communicated to Honeywell, who tested it in this country. The panel majority states that the Honeywell test “inured” to the benefit of the Russians. However, the Russians had no United States patent application that could benefit from “inurement,” even if my colleagues had not created the theory (for *1009 Honeywell does not so state) that Honeywell performed this evaluation on behalf of the Russian inventors. My colleagues simply rule that due to “inurement” the secret Honeywell test converts the still secret Russian technology into “prior art.”
In the earlier appeal in this case, the status of Honeywell’s test of the Russian technology was established, by final judgment, as “derivation.” Honeywell’s private testing did not convert the subject technology into prior art. The court’s new class of secret prior art enlarges the situations in which unknowable private activity may serve to invalidate the independent inventions of third parties. From the confused and incorrect new law announced by the court, I respectfully dissent.
Discussion
In the prior appeal in this action, the court considered Honeywell’s status in the context of § 102(g)(2):
Since it is undisputed that Honeywell did not originate the invention, but reproduced it in the United States by following RSCAC’s instructions, Honeywell cannot be said to have conceived of the invention and cannot, consequently, be an inventor for purposes of § 102(g)(2).
Solvay I, 622 F.3d at 1378. The court decided, unequivocally and finally, that Honeywell was not the inventor of the Russian technology
but, rather, derived it from RSCAC [Russian Scientific Center for Applied Chemistry], whose engineers invented it in Russia.
Id. at 1374. These rulings are the law of this case. It is no longer before this court to attempt to treat the Russian technology as if it were invented in the United States.
Also, I must correct the court’s erroneous statement concerning Honeywell’s later-filed United States patent application on its subsequent improvement and development of the Russian process. It is misleading to state that “the Russians applied for and received a patent in Russia, while Honeywell filed a patent application in the United States.” Maj. op. at 1007. The Honeywell patent application was not on the Russian invention but on the later Honeywell invention, as explained in Sol-vay I:
Throughout the summer of 1995, Honeywell continued working to develop and perfect its process for the preparation of HFC-245fa. The work included finding optimum operating conditions for the process, as well as designing and enabling downstream purification of the HFC-245fa product. Development of a pilot plant to test a commercially viable manufacturing process for HFC-245fa was begun by Honeywell, and the plant was in successful operation by February 1996. In March 1996, Honeywell began drafting a patent application on an improvement process for making HFC-245fa. The application was filed on July 3, 1996, and eventually issued as U.S. Patent No. 5,763,706 (“the '706 patent”). The '706 patent discloses a process for the continuous preparation of HFC-245fa, using optimal conditions for downstream purification, so that the HFC-245fa recovered by distillation has a high purity (at least about 99.5%). See '706 patent, col.11.60-col.2 1.25; col.411.40-42.
Solvay I, 622 F.3d at 1372 (citations omitted). My colleagues’ suggestion that this Honeywell patent was the United States counterpart of the Russian patent application, or somehow converted Honeywell’s evaluation of the Russian invention into “prior art” against Solvay and all others, is untenable.
The court in Solvay I resolved that the Russian invention was not made in the United States. The panel majority now *1010 concedes that the Russian process was conceived and reduced to practice in Russia, maj. op. at 1002, but states that “ § 102(g)(2) allows conception to occur in another country, but in such circumstances requires the work constituting the reduction to practice to be performed in the United States by or on behalf of the inventor.” Maj. op. at 1000. This is incorrect on two fronts. First, this court has never held that an invention conceived in a foreign country is “made in this country” under § 102(g)(2). And second, it was not shown that Honeywell’s work in the United States was “by or on behalf of’ the Russian inventors. Honeywell never so stated; that is a postulate of the panel majority.
In priority contests between conflicting United States patent applications under § 102(g)(1), reliance for priority has occasionally been authorized on activity conducted in the United States on behalf of a foreign applicant. Here there is no priority contest, no United States patent application, and no domestic activity on behalf of a foreign inventor. The cases cited by the panel majority are inapplicable.
The majority cites Holmwood v. Suga-vanam for the thesis that a “foreign inventor was ‘another inventor’ under § 102(g)(2) when the invention was reduced to practice in the United States on his behalf.” Maj. op. at 1000 n. 2. Holm-wood was an interference case under § 102(g)(1). Section 102(g)(2) was not at issue, nor did the foreign inventor claim to be “another inventor.” The majority’s citation is out of context, for the case is not applicable to any of the issues before us.
The other cases cited to support the ruling that Honeywell’s private/secret activity in the United States converted the Russian process into “prior art” are all “interference” contests, where United States activity served as evidence of priority of invention. E.g., Shurie v. Richmond, 699 F.2d 1156, 1158 (Fed.Cir.1983) (evidence that the process in interference was performed on behalf of the inventor in the United States); Scott v. Koyama, 281 F.3d 1243 (Fed.Cir.2002) (evidence of disclosure in the United States to show conception by a party to the interference); Tyler Refrigeration Corp. v. Kysor Industrial Corp., 601 F.Supp. 590 (D.Del.1985), aff'd on other grounds, 777 F.2d 687 (Fed.Cir.1985) (an actual reduction to practice in the United States could be relied on by a foreign inventor to support interference priority).
The panel majority’s reliance on “inurement” is thus irrelevant, for there is no United States application to which the Honeywell experiment could inure. Whether activity in the United States can support a foreign inventor’s interference priority has no relation to whether that activity is prior art against the world.
The panel majority insists that the Russian invention was merely conceived in Russia, and although reduced to practice in Russia, was also “reduced to practice” by Honeywell in the United States, whereby the panel majority concludes that the Russian invention was “made in this country.” Maj. op. at 1007. Not even Honeywell made that argument, and there was no evidence or argument that Honeywell’s work was done at the request of and on behalf of the Russians.
The panel majority makes much of the conclusion that the Russians did not “abandon, suppress, or conceal” their invention. No one argued otherwise. However, the unpublished, unused, unknown, Russian invention, contained in a Russian patent application with no United States counterpart, does not thereby become pri- or art.
*1011 Unpublished private activity in a foreign country is not prior art. Foreign inventions may of course be the subject of a United States patent, and the benefit of a foreign filing date may be obtained in accordance with 35 U.S.C. § 119. Here, however, there is no corresponding United States patent. The Russian patent application, filed on May 28, 1994, would, according to Russian law, have been “laid open” eighteen months later, on November 28, 1995, after Solvay’s priority date of October 23, 1995. Whether or not Honeywell’s work with the Russian process in the United States “inured” to the Russians, it could not convert the unpublished Russian application, or its unpublished evaluation in the United States, into prior art.
The issue here is not whether Honeywell has a personal defense to infringement, as the panel majority states: “We have repeatedly held that prior invention by another is a defense to infringement.” Maj. op. at 1007-08 n. 11. The issue is whether the Russian secret process became prior art against the world when Honeywell secretly reproduced it in the United States.
The Checkpoint case, relied on by the panel majority, is misapplied, first because Checkpoint confirms that § 102(g) relates to inventions “made in this country,” and second because Checkpoint on its facts offers no guidance here. In Checkpoint the question was patent validity related to in-ventorship, and the court stated, citing § 102(g), that: “Checkpoint does not contest that Kaltner completed the subject invention in this country.” Checkpoint Sys., Inc. v. U.S. Int’l Trade Comm’n, 54 F.3d 756, 761 (Fed.Cir.1995). The court explained that “a first inventor may seek to avoid a determination of abandonment by showing that he or she marketed or sold a commercial embodiment of the invention or described the invention in a publicly disseminated document,” id. at 762, none of which is here asserted. The only possible relevance of Checkpoint would be to show that the Russian invention was indeed abandoned by the Russians in the United States.
The Amgen and New Idea decisions that the majority cites to support its flawed reliance on Checkpoint concern inventions made in this country. In Amgen the question was whether conception and reduction to practice occurred together or separately for DNA sequence identification work done in this country. Amgen, Inc. v. Chugai Pharm. Co., Ltd., 927 F.2d 1200, 1205 (Fed.Cir.1991). And New Idea discussed the inventor’s work in this country, stating that “Burkhart’s testimony further showed that in early 1971, a prototype harvester was built with an arched tongue and a center pivot connection to the harvester.” New Idea Farm Equip. Corp. v. Sperry Corp., 916 F.2d, 1561, 1566 (Fed.Cir.1990). There was no issue of foreign invention.
Invalidation by secret prior art is disfavored. See OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1402 (Fed.Cir. 1997) (“Thus, the patent laws have not generally recognized as prior art that which is not accessible to the public.”); Kimberly-Clark Corp. v. Johnson & Johnson, 745 F.2d 1437, 1446 (Fed.Cir.1984) (defining § 102 “prior art” as “technology already available to the public,” and stating that “secret prior art” may not be used to invalidate a patent under § 102(g)). The majority’s spin on § 102(g) takes “secret prior art” into unintended territory.
There is no issue before us of whether Honeywell might have a personal defense against the Solvay patent; the only issue is whether the secret Honeywell test of the unpublished Russian process is prior art against the world. The court’s ruling that prior art includes secret information is of far-reaching potential impact. It is as un *1012 necessary as it is inappropriate to so enlarge the scope of secret prior art.
I respectfully dissent.